JUSTIN T. BERGER (SBN 250346)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jberger@cpmlegal.com

ALEXANDER S. ELSON
**NATIONAL STUDENT LEGAL DEFENSE NETWORK**
1701 Rhode Island Ave. NW
Washington, DC 20036
Telephone: (202) 734-7495
alex@defendstudents.org

DAVID BALTMANIS
**MINER, BARNHILL & GALLAND, P.C.**
325 N. La Salle St., Suite 350
Chicago, IL 60654
Telephone: (312) 751-1170
dbaltmanis@lawmbg.com

RYAN MILLER
**MINER, BARNHILL & GALLAND, P.C.**
44 E. Mifflin St., Suite 803
Madison, WI 53703
Telephone: (608) 255-5200
rmiller@lawmbg.com

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESSICA FULLER, et al.,<br><br>  Plaintiffs,<br><br>vs.<br><br>BLOOM INSTITUTE OF TECHNOLOGY, et al.,<br><br>  Defendants. | Case No. 3:23-CV-01440-AGT<br><br>**PLAINTIFFS' SECOND MOTION TO REMAND OR IN THE ALTERNATIVE FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**<br><br>Date: June 7, 2023<br>Time: 10:00 a.m.<br>Dept: Courtroom A, 15th Floor<br>Judge: Magistrate Alex G. Tse |

PLAINTIFFS' SECOND MOTION TO REMAND OR IN THE ALTERNATIVE FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY; Case No. 3:23-CV-01440-AGT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 7, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Magistrate Alex G. Tse, Plaintiffs will move the Court to remand, or in the alternative, for leave to conduct jurisdictional discovery.

Plaintiffs seek an order remanding this case to California state court or alternatively an order granting Plaintiffs leave to issue discovery as to the propriety of subject matter jurisdiction pursuant to the Class Action Fairness Act for the reasons stated in the following memorandum.

Dated: May 3, 2023         **MINER, BARNHILL & GALLAND, P.C.**

By:   /s/ *Ryan Miller*
         RYAN MILLER
         DAVID BALTMANIS

**NATIONAL STUDENT LEGAL DEFENSE NETWORK**
         ALEXANDER S. ELSON

**COTCHETT, PITRE & McCARTHY, LLP**
         JUSTIN T. BERGER

*Attorneys for Plaintiffs and the Proposed Class*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO REMAND OR IN THE ALTERNATIVE FOR
LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

Plaintiffs filed this putative class action in California state court on March 16, 2023, alleging that Defendants, a California-based for-profit coding bootcamp and its CEO, violated multiple California consumer protection statutes by, *inter alia*, misrepresenting the bootcamp's job placement rates and approval status with the State of California. Defendants have since filed two Notices of Removal. (Dkt. Nos. 1, 19.) Plaintiffs moved to remand following the first Notice of Removal, premised on ordinary diversity jurisdiction under 28 U.S.C § 1332(a), because the forum defendant rule prohibited removal, and Defendants separately failed to demonstrate that Plaintiffs' claims met the requisite amount in controversy.

In their amended Notice of Removal, Defendants abandon their erroneous assertion of jurisdiction under § 1332(a), but nonetheless again fail to meet their burden of establishing the requisite amount in controversy, this time pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). Defendants do not plausibly allege CAFA's $5 million amount in controversy, as they must for the Court to maintain CAFA jurisdiction, because their Amended Notice of Removal is silent as to how that amount in controversy should be calculated, any legal or factual support for that calculation, or even an approximate result of that calculation. This failure alone requires immediate remand.

But even if the Court disagrees, Plaintiffs' amount-in-controversy challenge in this Motion, as well as their contention below that this case may meet a CAFA exception, requires that this Motion remain pending while the Court allows jurisdictional discovery to proceed, so that "both sides submit proof and the court then decides where the preponderance lies." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Thus, the Court should either grant this Motion and immediately remand, or alternatively, grant Plaintiffs leave to conduct jurisdictional discovery as to both CAFA's amount-in-controversy requirement and its exceptions.

### Legal Standards

Removal pursuant to CAFA requires that the aggregated claims of class members exceed $5 million. *See generally* 28 U.S.C. § 1332(d). "The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d

842, 847 (9th Cir. 2011) (citation omitted). The Ninth Circuit has explained that, although the defendant can establish CAFA's amount-in-controversy requirement by plausible assertion in its notice of removal, a challenge to that assertion in a plaintiff's motion to remand requires that both sides submit proof, allowing the court to decide based on real evidence:

> [T]he Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal. [*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–91 (2014).] Yet, when the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies. *Id.* Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation ….

*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197–98 (9th Cir. 2015); *see also Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) ("Because Plaintiff contested removal, [Defendant] was required to show the amount in controversy by a preponderance of the evidence.") (citing *Dart Cherokee*, 574 U.S. at 88). Further, "[u]nder this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

Even if a defendant satisfies this burden, a plaintiff may prevail on a motion to remand by proving one of the § 1332(d)(3) and (4) CAFA exceptions[1] applies, based on the proportion of class members who are citizens of the state in which the action was originally filed. *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1013 (9th Cir. 2011) ("A plaintiff seeking remand has the burden of showing that [a CAFA] exception applies."). To meet this burden, a plaintiff must submit proof as to

---

[1] Section 1332(d)(3) allows a court to decline CAFA jurisdiction if the primary defendants and more than one-third but less than two-thirds of proposed class members are citizens of the state of original filings, based on consideration of six factors. Section 1332(d)(4)(B) requires a court to decline CAFA jurisdiction if more than two-thirds of proposed class members are citizens of the state in which the action was originally filed, and either (A) several conditions are met involving a defendant's citizenship, the site of injuries, and the existence of similar class actions, or (B) the primary defendants are citizens of the state of original filing. Thus, to carry their burden, "Plaintiffs must, as a threshold matter, establish by a preponderance of the evidence that more than one-third of the proposed class members of all proposed classes in the aggregate are citizens of [California] to invoke CAFA's discretionary exception, or that more than two-thirds of the proposed class members of all proposed classes in the aggregate are citizens of [California] to invoke either of the remaining exceptions. *See Angulo v. Providence Health & Servs. Washington*, 2023 WL 2573240, at *5 (W.D. Wash. Mar. 17, 2023) (citing § 1332(d)(3), (4)).

citizenship of class members, facilitated by "tak[ing] jurisdictional discovery tailored to proving" that citizenship. *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 883–85 (9th Cir. 2013) (instructing district court to allow jurisdictional discovery to determine proposed class members' citizenship).

Thus, a plaintiff is entitled to jurisdictional discovery to submit proof after challenging the amount in controversy, and to meet the burden of showing a CAFA exception applies.

## Argument

**I.  Defendants Fail to Plausibly Assert the Requisite Amount in Controversy under CAFA, and, At Best, Resort to Mere Speculation, Conjecture, and Unreasonable Assumptions.**

Defendants do not meet their burden because they fail to plausibly allege any methodology or calculation to reach CAFA's $5 million amount in controversy, let alone a result of that calculation. In their bare bones discussion, Defendants assert that the amount in controversy is met, purely based on: (1) Plaintiffs' allegations that class members' income share agreements or other tuition payment plans ("ISAs") *could* indebt them up to $30,000; (2) Plaintiffs' request to prevent collection on ISAs and repayment of all amounts paid pursuant to the ISAs; and (3) Plaintiffs' "description of the putative class," without further explanation. (Am. Notice of Removal ("ANOR") at ¶ 12.) By leaving the Court and Plaintiffs in the dark as to how these few factual nuggets plausibly establish the requisite amount in controversy, Defendants fail to meet this most basic burden, requiring immediate remand.

But even if the Court is inclined to take on Defendants' burden for them—on their second attempt at removal, no less—and calculate the amount in controversy from these meager allegations, Defendants have not provided the Court with the necessary factors for that calculation. Specifically, to calculate the amount in controversy, Defendants must shed light on "the pecuniary result to either party" of a judgment in Plaintiffs' favor—*i.e.* the value of repayments of all amounts *paid* towards ISAs. *See Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017) ("[T]he test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce."). Defendants appear to agree, admitting that Plaintiffs seeking "repay[ment of] all amounts paid pursuant to such ISAs" (ANOR at ¶ 12) is part of the calculation. Yet conspicuously absent from their Amended Notice of Removal is any indication of the "pecuniary result" of those repayments, that is, their actual monetary value. Obviously, that information cannot be found in the

Complaint because it is in Defendants', not Plaintiffs', knowledge and possession, and as such, Defendants cannot plausibly allege that value by mere reference to the Complaint. The failure to allege at all, let alone plausibly, the value of those repayments requires remand.

To the extent Defendants' Amended Notice of Removal can be read to suggest that the $30,000 per-student figure is a relevant factor in the amount-in-controversy calculation, they are engaging in the type of "speculation and conjecture, with unreasonable assumptions" that precludes them from establishing CAFA jurisdiction. *See Ibarra*, 775 F.3d at 1197. First, as explained above, the relevant measure is the amount *paid* towards ISAs, not the $30,000 maximum possible value of the ISA at signing. As Defendants admit in separate briefing, this amount is zero for some class members (*see* Def. Bloom's Mot. Dismiss, Dkt. No. 11, at 9) (describing Plaintiffs who "have not paid a penny") because any debt created by the ISAs is *conditional* on the student getting a qualifying job to trigger payment obligations. (Compl. at ¶ 1.) Again, Defendants, not Plaintiffs, have possession of information as to just what proportion, whether a minority, majority, or even strong majority, have paid nothing on their ISAs.

Second, ISA payments towards that $30,000 made *after* the date of removal do not factor into the amount in controversy calculation. That is because the amount in controversy is determined based on the record at the time of removal, not based on future, post-removal payments. *See Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) ("[T]he amount in controversy must be determined as of the date of removal") (citations omitted); *Garfias v. Team Indus. Servs., Inc.*, 2017 WL 4512444, at *4 (C.D. Cal. Oct. 10, 2017) (explaining that defendant's reliance on lost wages incurred after removal to be speculative given unknown trial date and also inconsistent with rule that "[t]he amount in controversy for purposes of determining jurisdiction over a matter that has been removed is measured as of the date of the removal.") (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)); *Ison v. Berkshire Life Ins. Co. of Am.*, 2021 WL 2328003, at *2 (E.D. Ky. June 8, 2021) (in case involving claim for disability benefits that accrued monthly, post-filing benefits did not count towards amount in controversy; accepting otherwise "would cut against the clear rule … which freezes the calculation … as of the claimant's filing date" and "bumps against the accepted practice that 'satisfaction of the amount-in-controversy requirement generally is determined on the

basis of the record at the time the notice of removal … is filed with the district court.'") (quoting 14C Fed. Prac. & Proc. Juris. § 3725.4 (Rev. 4th ed.)); *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 299 (E.D.N.Y. 2005) ("Defendant argues that the court can look to continuing damages to establish the jurisdictional amount. … [T]he amount in controversy is established as of the date of the complaint (or of the notice of removal) and is not reevaluated based on post-filing events. Thus, benefit payments which accumulate during the pendency of the action do not affect the amount in controversy as of the date of the notice of removal.") (citations omitted). "This time-of-filing rule is hornbook law … taught to first-year law students in any basic course on civil procedure." *Carlson v. Gatestone & Co. Int'l*, 2017 WL 2615764, at *2 (N.D. Cal. June 16, 2017) (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004)). In this case then, actual or hypothetical post-removal payments made towards the $30,000 maximum ISA value are irrelevant, making the $30,000 figure itself irrelevant.

Third, $30,000 was the maximum value of some ISAs *at signing*, but many students, including Plaintiff Jessica Fuller, withdrew early in the program to significantly reduce that $30,000. (*See* Compl. at ¶ 112.) So even if the maximum possible ISA value were relevant to the amount in controversy, which, as described above, it is not, $30,000 is the not the actual maximum value for all students. The Amended Notice of Removal provides no allegations regarding that value.

Defendants' brief discussion of attorneys' fees in the Amended Notice of Removal continues the parade of "speculation and conjecture, with unreasonable assumptions" that precludes them from establishing CAFA jurisdiction. *See Ibarra*, 775 F.3d at 1197. The only support for Defendants' amount-in-controversy figure is a citation to *Greene v. Harley-Davidson, Inc.,* 965 F.3d 767, 774 n.4 (9th Cir. 2020), which indeed found in a footnote that it was reasonable for the defendant to include in its calculation 25% of compensatory and punitive damages for attorneys' fees. However that finding was "based on [the defendant's] evidence," *id.*, whereas here Defendants put forth no evidence of any kind. Without such evidence, many courts have relied on the time-of-filing rule to *exclude* post-removal attorneys' fees from a defendant's amount-in-controversy calculation. *See Sabatini v. Ricoh USA, Inc.*, 2016 WL 4611017, at *2 (N.D. Cal. Sept. 6, 2016) ("[W]hen estimating attorney's fees for the purposes of establishing jurisdiction, the fees that should be considered are those incurred as of the date of removal.") (listing cases and quoting *Icard v. Ecolab, Inc.*, 2010 WL 2528968, at *2 (N.D. Cal. June 18,

PLAINTIFFS' SECOND MOTION TO REMAND OR IN THE ALTERNATIVE FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY; Case No. 3:23-CV-01440-AGT

7

2010)). Defendants' conclusory and speculative fees figure, like the rest of its amount-in-controversy discussion, is insufficient to establish CAFA jurisdiction, requiring immediate remand.

## II. Plaintiffs Alternatively Request Leave to Conduct Jurisdictional Discovery as to CAFA's Amount-in-Controversy Requirement and Exceptions.

If the Court does not grant Plaintiffs' motion to remand, Plaintiffs alternatively request leave to conduct jurisdictional discovery as to the amount in controversy and CAFA's exceptions.

"[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies. Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation …." *Ibarra*, 775 F.3d at 1198. Since Defendants, and possibly their partner loan servicers, are in sole possession of such "real evidence" of payments that have been made, Plaintiffs are entitled to discovery on those payments.

Similarly, as to the CAFA exceptions, Plaintiffs do not, and cannot, know without discovery what proportion of class members are California citizens because that information is exclusively within the possession of Defendant Bloom, and possibly its partnering loan servicers. While Defendants allege that less than one-third of putative class members are citizens of California, they do not support the allegation with anything but their own say-so. (*See* ANOR at ¶¶ 4, 11.) Because California is the most populous state, the locus of tech work in America, and home of Defendant Bloom's headquarters since its founding, there is a particularly strong basis for discovery on class member citizenship for CAFA exception purposes.

In order to submit proofs as to both CAFA's amount in controversy and exceptions, Plaintiffs propose limited discovery: issuing a single interrogatory requesting the name, last known address, last known phone number, last known email address, ISA signature date, date of withdrawal (if applicable), and total ISA payments as of the date of removal for each putative class member.[2] This discovery is

---

[2] Based on the proposed class definition in the Complaint, Plaintiffs believe the discovery would encompass all of Defendants' students who signed ISAs or other tuition payment plans starting sometime in March 2020 (when Defendants first issued ISAs with criteria matching the proposed class definition) to the present.

consistent with or even less burdensome than that routinely permitted in other cases removed pursuant to CAFA. *See, e.g.*,

- *Angulo v. Providence Health & Servs. Washington*, 2023 WL 2573240, at *6–7 (W.D. Wash. Mar. 17, 2023) (agreeing with plaintiffs that "limited discovery is necessary for the purposes of determining … whether any of the CAFA exceptions apply," and ordering defendant to "produce a list containing the **name, phone number, last-known address, and email address** (if applicable) of each member of the proposed classes as defined in the amended complaint") (emphasis added);

- *Whittum v. Univ. Med. Ctr. of S. Nev.*, 2022 WL 4466182, at *2, 4–5, n.6 (D. Nev. Sept. 23, 2022) (granting plaintiffs' request for jurisdictional discovery as to CAFA exception, including **names, address, and identifying information** of putative class member hospital patients allegedly affected by data breach, defendant's HIPAA concerns notwithstanding, "because Plaintiffs have limited access to class citizenship information and because more data is necessary for the Court to resolve the remand issue" ) (emphasis added);

- *Spargifiore v. Panda Rest. Grp., Inc.*, 2021 WL 405815, at *2 (C.D. Cal. Feb. 4, 2021) ("Within two weeks of the issuance of this Order, Defendant must provide Plaintiff with the **names, last known addresses, phone number**, hire date, and, where relevant, termination date of all members of the putative class. This information is in the sole possession of Defendant.") (emphasis added);

- *Collins v. Golden Gate Bell, LLC*, 2019 WL 2523571, at *1 (N.D. Cal. June 19, 2019) ("In support of the motion to remand, plaintiffs requested and this Court granted jurisdictional discovery from [defendant, who] produced a data set containing identifying information for the putative class members, including those individuals' **names, addresses, employment dates, U.S. citizenship status, driver's license or other identification (such as municipal or school ID cards) information**. The data set included records for 11,626 people.") (emphasis added, citations omitted); and

- *Brinkley v. Monterey Fin. Servs., Inc.*, 2016 WL 4886934, at *6 (S.D. Cal. Sept. 15, 2016) ("The court will allow the parties a period of 60 days to engage in limited jurisdictional

PLAINTIFFS' SECOND MOTION TO REMAND OR IN THE ALTERNATIVE FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY; Case No. 3:23-CV-01440-AGT

9

discovery regarding the amount in controversy requirement and the CAFA exceptions.") and 2017 WL 1094062, at *4 (S.D. Cal. Mar. 23, 2017) (explaining that, following prior order, "Defendants provided Plaintiff with a **class list identifying 152,141 putative class members, containing their most recent name, address, and telephone number** and the dates of the first and last recorded calls.") (emphasis added, citation omitted), *vacated and remanded on other grounds*, 873 F.3d 1118 (9th Cir. 2017).

Each of these cases ordered production of contact or identification information *beyond* last known addresses. Although that information does not definitively establish citizenship, it is nevertheless necessary to allow Plaintiffs to cross-check with putative class members—many of whom are years removed from attending Defendants' school—whether their last known address is current for CAFA citizenship purposes. *See Angulo*, 2023 WL 2573240, at *6–7 (ordering production of phone numbers and email addresses and allowing plaintiffs to "use … contact information to ascertain proposed class members' citizenship as of the filing of the amended complaint"); *Whittum*, 2022 WL 4466182, at *5 (explaining that last known address constitutes "*some* evidence" of CAFA citizenship, depending on how current the information is) (emphasis in original, citing *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020)).

## Conclusion

For the foregoing reasons, the Court should either grant this Motion and immediately remand, or alternatively, grant Plaintiffs leave to conduct jurisdictional discovery as to both CAFA's amount-in-controversy requirement and its exceptions.

Dated: May 3, 2023                     **MINER, BARNHILL & GALLAND, P.C.**

By: ___/s/ *Ryan Miller*_____
    RYAN MILLER
    DAVID BALTMANIS

**NATIONAL STUDENT LEGAL DEFENSE NETWORK**
    ALEXANDER S. ELSON

**COTCHETT, PITRE & McCARTHY, LLP**
    JUSTIN T. BERGER

*Attorneys for Plaintiffs and the Proposed Class*