BRIAN DANITZ (SBN 247403)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
bdanitz@cpmlegal.com

ALEXANDER S. ELSON
**NATIONAL STUDENT LEGAL DEFENSE NETWORK**
1701 Rhode Island Ave. NW
Washington, DC 20036
Telephone: (202) 734-7495
alex@defendstudents.org

DAVID BALTMANIS
**MINER, BARNHILL & GALLAND, P.C.**
325 N. La Salle St., Suite 350
Chicago, IL 60654
Telephone: (312) 751-1170
dbaltmanis@lawmbg.com

RYAN MILLER
**MINER, BARNHILL & GALLAND, P.C.**
44 E. Mifflin St., Suite 803
Madison, WI 53703
Telephone: (608) 255-5200
rmiller@lawmbg.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA FULLER, et al.,<br><br>         Plaintiffs,<br><br>   vs.<br><br>BLOOM INSTITUTE OF TECHNOLOGY, et al.,<br><br>         Defendants. | Case No. 3:23-CV-01440-AGT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY THE CASE**<br><br>Date:  January 12, 2024<br>Time: 10:00 a.m.<br>Dept:  Courtroom A, 15th Floor<br>Judge: Magistrate Alex G. Tse |

# **TABLE OF CONTENTS**

Page

Table of Authorities ............................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      The ISAs do not "clearly and unmistakably"
        delegate questions of arbitrability to the arbitrator ................................................... 2

        A.      Only "proceedings" subject to arbitration under the
                ISAs are governed by AAA rules, and this proceeding
                is unambiguously not subject to arbitration, meaning nothing
                has been "clearly and unmistakably" delegated to the arbitrator ............................. 3

        B.      Plaintiffs lack the sophistication to understand that
                the mere mention of arbitration rules deprives them of court review ..................... 8

                1.      The greater weight of authority—and better-reasoned
                        authority—in this district considers sophistication ....................................... 8

                2.      Defendants' sophistication discussion
                        misapplies distinguishable cases ..................................................................... 11

II.     The unambiguous language of the ISA shows that
        this proceeding is not subject to arbitration ............................................................... 14

        A.      The plain language of the ISA exempts "proceedings
                seeking an injunction, a restraining order, or any other
                equitable remedy," which this proceeding indisputably does ................................... 14

        B.      Defendants could have used an arbitration clause without a
                carveout and have done so before, but chose not to do so here ................................ 16

        C.      The plain language answers the question, but even if
                it does not, case law favors Plaintiffs as well ........................................................... 17

                1.      The Ninth Circuit decisions cited by Defendants
                        are based on distinguishable contract language ............................................. 17

                2.      Cases considering similar language
                        overwhelmingly support Plaintiffs' interpretation ........................................ 19

D.     Defendants' argument that certain of Plaintiffs' claims
       "do not necessarily qualify as equitable relief" is irrelevant
       based on the plain language of the contract, and is incorrect
       and based on inapplicable caselaw in any event ........................................ 22

III.   There is no valid agreement to arbitrate as to Plaintiffs Fuller,
       Goncalves, and McAdams and the BPPE subclass because California
       law forbids the enforcement of the ISAs, including the arbitration clause .......................... 24

CONCLUSION .................................................................................................. 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

CASES                                                                                                      Page

3

*Alfia v. Coinbase Glob., Inc.*, 2022 U.S. Dist. LEXIS 130559 (N.D. Cal. July 22, 2022) ......... passim

4

*Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019) ...................... passim

5
6

*Auntie Anne's, Inc. v. Wang*, CV 14-01049, 2014 WL 11728722
2014 U.S. Dist. LEXIS 198807  (C.D. Cal. July 16, 2014) ...................................................... 21

7

*Baker v. Montrone*, 18-cv-0913-PB, 2020 U.S. Dist. Lexis 4340 (D.N.H. Jan. 10, 2020)......... 21

8

*Berg v. Mtc Elecs. Techs. Co.*, 71 Cal. Rptr. 2d 523 (Cal. Ct. App. 1998)................................. 15

9
10

*Blair v. Inform Software Corp.*, 2023 U.S. Dist. LEXIS 3032 (N.D. Cal. Jan. 8, 2023) ............ 8, 13

11

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .............................................................. 2, 3

12

*Clarus Med., LLC v. Myelotec, Inc.*, CIV. 05-934, 2005
U.S. Dist. LEXIS 30540 (D. Minn. Nov. 30, 2005) .................................................................... 22

13
14

*Comedy Club, Inc. v. Improv W. Associates*, 553 F.3d 1277 (9th Cir. 2009) ........................... 17, 18

15

*Cont'l Materials, Inc. v. Veer Plastics Private Ltd.*, 22-cv-3685,
2023 U.S. Dist. LEXIS 59703, (E.D. Pa. Apr. 5, 2023) ............................................................ 22

16

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004)  ............................................... 12

17
18

*Diaz v. Intuit, Inc.*, 2017 U.S. Dist. LEXIS 162968 (N.D. Cal. Sep. 29, 2017) ........................ 14

19

*Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482 (9th Cir. 2020).................................................. 17, 18

20

*DXP Enterprises, Inc. v. Goulds Pumps, Inc.*, No. H-14-1112,
2014 U.S. Dist. LEXIS 156158 (S.D. Tex. Nov. 4, 2014)........................................................... 22

21
22

*E.E.O.C. v. Waffle House*, 534 U.S. 279 (2002) ....................................................................... 19

23

*Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240 (N.D. Cal. 2019) ................................. passim

24

*Farr v. Acima Credit LLC*, 20-CV-8619-YGR,
2021 U.S. Dist. Lexis 126431 (N.D. Cal. July 7, 2021) ............................................................ 21

25
26

*Fauceglia v. Univ. of S. Cal.*, 2021 U.S. Dist. LEXIS 87530 (C.D. Cal. Mar. 29, 2021).......... passim

27

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995)  ..................................................... passim

28

*Frydman v. Diamond*, 2015 U.S. Dist. LEXIS 120774 (S.D.N.Y. 2015)................................... 20

*G.G. v. Valve Corp.*, 799 Fed. App'x 557 (9th Cir. 2020)) ........................................................ 3

*Garcia v. Gateway Hotel L.P.*, 82 F.4th 750 (9th Cir. 2023)........................................................ 12

*Gerlach v. Tickmark Inc.*, 2021 U.S. Dist. LEXIS 141105 (N.D. Cal. July 28, 2021) .............. 11

*Han v. Synergy Homecare Franchising, LLC*, No. 16-cv-03759-KAW,
2017 U.S. Dist. LEXIS 15021 (N.D. Cal. Feb. 2, 2017)........................................................ 5

*Henry Schein, Inc. v. Archer & White Sales Inc.*, 139 S. Ct. 524 (2019) ................................. 1, 17

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ...................................................... 2

*In re Vioxx Class Cases*, 80 Cal. App. 4th 116 (2009) .............................................................. 23

*Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*,
17 C 2066, 2017 U.S. Dist. LEXIS 97180 (N.D. Ill. June 23, 2017)................................... 22

*Ingalls v. Spotify USA, Inc.*, 2016 U.S. Dist. LEXIS 157384 (N.D. Cal. Nov. 14, 2016) ......... 9, 10

*Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022) .................................................. 24

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ................................... 23

*L&S Framing, Inc. v. Occupational Safety & Health Appeals Bd.*,
93 Cal. App. 5th 995 (2023)............................................................................................ 24, 25

*MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022)............................... passim

*Magill v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 248891
(N.D. Cal. June 25, 2021) ............................................................................................ passim

*Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, No. 22-CV-00064-LK,
2023 U.S. Dist. LEXIS 12313 (W.D. Wash. Jan. 24, 2023)........................................... passim

*Marriott Ownership Resorts, Inc. v. Flynn*, 2014 U.S. Dist.
LEXIS 171722 (D. Haw. Dec. 11, 2014)............................................................................ 11

*Maybaum v. Target Corp.*, 22-cv-00687-MCS-JEM,
2022 U.S. Dist. LEXIS 80466 (C.D. Cal. May 3, 2022)..................................................... 11

*McKesson Corp. v. Health Robotics, S.R.L.*, C-11-00728,
2011 U.S. Dist. LEXIS 81192 (N.D. Cal. July 26, 2011) .................................................... 21

*McLellan v. Fitbit, Inc.*, 2017 U.S. Dist. LEXIS 168370 (N.D. Cal. Oct. 11, 2017)................. 13

*Meadows v. Dickey's Barbecue Rests., Inc.*, 144 F. Supp. 3d 1069 (N.D. Cal. 2015) .............. passim

*Miller v. Time Warner Cable Inc.*, 16-cv-00329-CAS,
2016 U.S. Dist. LEXIS 179444 (C.D. Cal. Dec. 27, 2016) ....................................................... 11

*Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016) ...................................... 3, 12

*Money Mailer, LLC v. Brewer*, 2016 U.S. Dist. LEXIS 47928 (W.D. Wash. Apr. 8, 2016)  .... 9

*Murray v. Under Armour, Inc.*, 2019 U.S. Dist. LEXIS 231532 (C.D. Cal. Feb. 11, 2019) ...... 9, 13

*Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17 (2012) ............................................................ 15

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013) ................................. passim

*Proulx v. Brookdale Living Communities Inc.*, 88 F. Supp. 3d 27 (D.R.I. 2015)....................... 21

*Starnes v. Harrell Indus., Inc.* CA 0:13-01109-JFA,
2013 U.S. Dist. LEXIS 183085 (D.S.C. Aug. 30, 2013),
*report and recommendation adopted*, 2014 U.S. Dist. LEXIS 2551 (Jan. 9, 2014)................... 21

*SteppeChange LLC v. VEON Ltd.*, 354 F.Supp.3d 1033 (N.D. Cal. 2018) ............................... 6

*Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928 (N.D. Cal. 2019) .............................................. 22

*United States v. Miraca Life Scis., Inc.*, 2021 WL 679275
(M.D. Tenn. Feb. 22, 2021), *aff'd sub nom. United States
ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352 (6th Cir. 2022) ...................................... 20, 21

*Vargas v. Delivery Outsourcing, LLC*,
2016 U.S. Dist. LEXIS 32634 (N.D. Cal. Mar. 14, 2016) ......................................................... 9, 13


STATUTES

Cal. Civ. Code § 1641 ................................................................................................................. 15

Cal. Civ. Code § 1782 ................................................................................................................. 23

Cal. Code Civ. P. § 116.221 ....................................................................................................... 16

California Education Code, § 94917 ........................................................................................... 24

California Education Code, § 94922 ........................................................................................... 24

Federal Arbitration Act, 9 U.S.C. § 4 ......................................................................................... 2


OTHER AUTHORITIES

*Black's Law Dictionary* (11th ed. 2019)................................................................................. 6, 24

**INTRODUCTION**

The parties agree on the central principle underlying arbitration agreements: "arbitration is a matter of contract, and courts must enforce arbitration contracts *according to their terms*." *Henry Schein, Inc. v. Archer & White Sales Inc.*, 139 S. Ct. 524, 529 (2019) (emphasis added). Here, those terms require that the Court deny Defendants' motion.

The income share agreements (ISAs) that Defendants drafted and presented to Plaintiffs unambiguously exclude equitable claims like those brought by Plaintiffs from arbitration:

> As the exclusive means of initiating adversarial proceedings to resolve any dispute arising out of this agreement, your Lambda School tuition, or your payments to Lambda School (*other than any proceeding commenced by either party seeking an injunction, restraining order, or any other equitable remedy or a proceeding commenced by either party in small claims court*), either party may demand that the dispute be resolved by binding arbitration administered by the American Arbitration Association in accordance with its Consumer Arbitration Rules ....

(Compl. Exhs. A-D (emphasis added).) Defendants perform all sorts of linguistic gymnastics to claim that the agreement only carves out certain "remedies," but that all "disputes" are somehow still subject to arbitration. (Mot. at 21-22.) They go as far as offering four different ways to read the agreement to force this case out of court (*id.* at 22-24) before ultimately confessing that if push comes to shove they want the Court to *rewrite the agreement* to compel arbitration (*id.* at 28-29). Not one of these approaches follows the actual language of the agreement, which speaks neither in terms of "remedies" nor "disputes" but "*proceedings*," two kinds of which are carved out without limitation: proceedings "seeking an injunction, restraining order, or any other equitable remedy" or proceedings "commenced … in small claims court."

This plain language should begin and end the Court's inquiry. Plaintiffs' argument proceeds in three steps: ***First***, Plaintiffs show that the contract does not clearly and unmistakably delegate the question of arbitrability to the arbitrator, meaning that the Court, not the arbitrator, must decide arbitrability. ***Second***, the contract answers the question of arbitrability unambiguously by excluding "proceeding[s]" like this one from the arbitration clause entirely. Indeed, Defendants could have written agreements requiring arbitration of Plaintiffs' claims—and have in fact done so for students in the prior actions by Plaintiffs' counsel referenced in the Motion. (Mot. at 10.) ***Third***, even if the Court has doubts about the applicability of the arbitration clause, for Plaintiffs Fuller, McAdams, and Goncalves and the

1    BPPE Subclass, the entire ISA—including the arbitration clause—is *per se* void and unenforceable

2    under California law because it was issued when Lambda was operating without approval.

3                                              **ARGUMENT**

4    **I.    The ISAs do not "clearly and unmistakably"**
         <u>delegate questions of arbitrability to the arbitrator.</u>

5              While the Federal Arbitration Act ("FAA") allows a party to an arbitration agreement to petition

6    the court for an order compelling arbitration, as Defendants have in their Motion, the court can only

7    issue that order once it is "satisfied that … the failure to comply therewith is not in issue[.]" 9 U.S.C. §

8    4. Thus, "[g]enerally, in deciding whether to compel arbitration, ***a court***," not an arbitrator, "must

9    determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and

10   (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.

11   2015) (emphasis added) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Only

12   as an exception to this general rule can "these gateway issues [] be expressly delegated to the

13   arbitrator," and only "where the parties *clearly and unmistakably* provide otherwise." *Id.* (emphasis in

14   original; quotations and citation omitted). *See also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938,

15   944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is

16   clear and unmistakable evidence that they did so.") (cleaned up). "In other words, there is a

17   presumption that ***courts*** will decide which issues are arbitrable; the federal policy in favor of arbitration

18   does not extend to deciding questions of arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d

19   1069, 1072 (9th Cir. 2013) (emphasis added).

20             Defendants contend that this case is exceptional—that it should *not* follow the general rule of a

21   ***court*** determining arbitrability—based on a mangled reading of the ISAs' arbitration clause. They first

22   argue that the "plain meaning" of the clause sends *all* disputes to arbitration. (Mot at 12.) Then in the

23   very next sentence, belying that supposed plainness, Defendants conveniently scrub out with an ellipsis

24   conspicuous limiting language carving out "any proceeding … seeking an injunction … or any other

25   equitable remedy," such as this case. Their interpretation is anything but clear and unmistakable.

26             They next point to the arbitration clause's reference to the AAA Consumer Arbitration Rules.

27   (*Id.* at 13.) Based on this reference, which states that AAA rules govern those "proceedings" subject to

28

---

arbitration under the clause, Defendants contend the ISAs delegate arbitrability. Although incorporating AAA rules *can*, under some circumstances, show intent to delegate arbitrability (because those rules in turn allow the arbitrator to rule on jurisdiction), it does not in this case for two reasons: First, as stated, the arbitration clause expressly provides that "any proceeding … seeking an injunction … or any other equitable remedy" is *not* subject to arbitration and thus is *not* governed by the AAA rules. That is, AAA rules govern only those "proceedings" subject to arbitration, and this proceeding is *not* one of them, as it seeks injunctions and other equitable remedies.[1] Second, even if the contractual language were not definitive, there was no meeting of the minds regarding incorporation of AAA rules delegating arbitrability to the arbitrator. Prospective coding bootcamp students, such as Plaintiffs, are not sophisticated enough in the art of arbitration contracts to infer that the mere mention of AAA rules deprives them of the opportunity for a court to determine whether their case stays in court.

> **A.    Only "proceedings" subject to arbitration under the ISAs are governed by AAA rules, and this proceeding is unambiguously not subject to arbitration, meaning nothing has been "clearly and unmistakably" delegated to the arbitrator.**

The question of "who has the primary power to decide arbitrability"—the court or the arbitrator—"turns upon what the parties agreed about that matter." *Oracle Am., Inc.*, 724 F.3d at 1072 (quoting *First Options of Chi.*, 514 U.S. at 943). While the "Ninth Circuit has held that 'incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability,'" "nothing in [its] jurisprudence suggests that talismanic incorporation of the AAA Rules creates an unqualified delegation of the arbitrability determination, even in the midst of limiting language." *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, No. 22-CV-00064-LK, 2023 U.S. Dist. LEXIS 12313, at *13-15 (W.D. Wash. Jan. 24, 2023) (quoting *Brennan*, 796 F.3d at 1130; *G.G. v. Valve Corp.*, 799 Fed. App'x 557, 558 (9th Cir. 2020)). "Indeed, and consistent with basic principles of contract law, the Ninth Circuit has made clear that parties are free to limit their delegation to specific issues." *Id.* at *15 (citing *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016)).

The arbitration clause's equitable proceedings carveout here plainly excludes this case from any purported delegation to an arbitrator. Try as Defendants might to selectively edit out the carveout (Mot.

---

[1] Therefore, not only is the question of arbitrability not "clearly and unmistakably" delegated to the arbitrator, the ISAs conclusively provide that this proceeding belongs in court, not arbitration. *See infra* Part II.

at 12), or reduce its discussion to a mere footnote (*id.* at 13 n.2), the carveout is critical to the question of delegation. It states that "any proceeding … seeking an injunction … or any other equitable remedy" is an exception to either party demanding arbitration pursuant to AAA rules:

> As the exclusive means of initiating adversarial proceedings to resolve any dispute arising out of this agreement, your Lambda School tuition, or your payments to Lambda School (***other than any proceeding commenced by either party seeking an injunction, a restraining order, or any other equitable remedy*** or a proceeding commenced by either party in small claims court), either party may demand that the dispute be resolved by binding arbitration administered by the American Arbitration Association in accordance with its Consumer Arbitration Rules available at www.adr.org.

(Compl. Exhs. A-D (emphasis added).) The plain meaning of the clause is that proceedings to resolve any dispute, *other than* proceedings seeking equitable remedies or in small claims court, are to be resolved by arbitration in accordance with the AAA rules. So even if the clause's incorporation of AAA rules can *generally* delegate the question of arbitrability, the carveout specifically excludes equitable remedy proceedings, like this one, from that *general* delegation. If anything, it is *this* reading that is clear and unmistakable (though, as Defendants admit, the Court need only find that Defendants' interpretation is *not* clear and unmistakable to rule on arbitrability).

Many courts analyzing similar arbitration clauses with carveouts have held that they do not clearly and unmistakably delegate questions of arbitrability. In *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, the court considered an arbitration clause resembling the one in the ISAs:

> Applicant and the Employer agree to resolve any and all claims, disputes or controversies arising out of or relating to Applicant's … employment and/or cessation of employment (**other than, if applicable, unfair competition claims** as defined below), through final and binding arbitration, pursuant [to the FAA] conducted by the [AAA] … in accordance with and governed by the [AAA] Employment Arbitration Rules and Mediation Procedures ("AAA Rules").

2023 U.S. Dist. LEXIS 12313, at *4-5 (emphasis added). The court held that the "plain language … incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-out," *i.e.* unfair competition claims. *Id.* at *22. The clause here is structured the same, stating that "proceedings" to resolve disputes, "*other than* … any proceeding … seeking an injunction, restraining order or any other equitable remedy" or in small claims court, are subject to arbitration in accordance with AAA rules. As in *Maguire*, the delegation is not clear and unmistakable because of the carveout. Indeed, the carveout shows the case is not subject to arbitration at all. *See infra* Part II.

The court reached the same result, based on a similar arbitration clause, in *Han v. Synergy Homecare Franchising, LLC*. The arbitration clause there read:

> **Except for controversies or claims relating to the ownership of any of Franchisor's Marks, the unauthorized use or disclosure of Franchisor's Confidential Information, covenants against competition, money due on contracts, or claims arising from or related to termination of this Agreement for violations of health or safety regulations**, all disputes arising out of or relating to this Agreement or to any other agreements between the parties, or with regard to interpretation, formation or breach of this or any other agreement between the parties, will be settled by binding arbitration conducted in Maricopa County, Arizona, in accordance with the Commercial Arbitration Rules of the America Arbitration Association then in effect.

No. 16-cv-03759-KAW, 2017 U.S. Dist. LEXIS 15021, at *2-3 (N.D. Cal. Feb. 2, 2017) (emphasis added to carveout clause). The court noted that "at first blush, it is unclear whether the carve out applies to either the delegation or arbitration provisions or both," and thus, the delegation did "not appear to be clear and unmistakable." *Id.* at *12. This lack of clarity came from both the delegation and arbitration provisions existing in "a single sentence, such that the carve outs appear[ed] to apply to both." *Id.* at *15-16. Thus, the agreement did "not clearly and unmistakably delegate arbitrability to arbitration. Rather, it delegates only those disputes that were not clearly excluded from the arbitration provision." *Id.* at *20. The court explained that the outcome would be the same whether the carveouts were at the beginning of the sentence, or elsewhere in the same sentence—like the mid-sentence parenthetical here. *Id.* at *16-17. Like in *Han*, the arbitration clause here contains the delegation provision in the same sentence as the carveout, and a natural reading of the carveout provides an exception to the delegation.

The Fifth Circuit reached the same result when analyzing the delegation in an arbitration agreement that, just like the ISAs, parenthetically carved out actions seeking injunctive relief:

> [a]ny dispute arising under or related to this Agreement (**except for actions seeking injunctive relief** and disputes related to trademarks, trade secrets, or other intellectual property of [the predecessor]), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association.

*Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 280 (5th Cir. 2019) (italics in original omitted; bolded emphasis added to carveout). The court found that "the placement of the carve-out here is dispositive." *Id.* at 281. "The most natural reading of the arbitration clause at issue here states that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules." *Id.* "The plain language incorporates the AAA rules—and therefore delegates

1    arbitrability—for all disputes *except* those under the carve-out." *Id.* (emphasis in original). "The parties

2    could have unambiguously delegated this question, but they did not, and we are not empowered to re-

3    write their agreement." *Id.* at 282.

4        *Archer & White Sales* is indistinguishable from this case. The arbitration clauses in both cases

5    are structured in precisely the same way, demanding the same result. Both begin with language stating

6    that the clause applies to "any dispute" arising under their respective agreements. Both follow that

7    language with a parenthetical excluding certain types of cases (termed "proceedings" in one contract,

8    "actions" in another),[2] including those seeking injunctive relief. Both conclude nearly verbatim, stating

9    that disputes falling *outside* the parenthetical be resolved by binding arbitration in accordance with

10   AAA rules. Precisely as the Fifth Circuit found, "[t]he most natural reading" of the ISAs provides that

11   any dispute, *except* actions seeking injunctive relief, shall be resolved in arbitration under AAA rules.

12       The cases Defendants cite in support of their delegation position both involve distinguishable

13   arbitration agreements. (*See* Mot. at 12-13.) Defendants only cite *SteppeChange LLC v. VEON Ltd.*,

14   354 F.Supp.3d 1033 (N.D. Cal. 2018), for two general propositions—that a delegation must be clear

15   and unmistakable, and that incorporation of arbitration rules can be evidence of the delegation—both

16   unobjectionable. (*See* Mot. at 12-13.) Beyond that, the case is distinguishable because the arbitration

17   clause at issue lacked a carveout paired with the delegation provision. Although the plaintiff argued the

18   agreement "carve[d] its claims out from the arbitration clause," the basis of that carveout was an

19   entirely *separate* portion of the agreement. *Id.* at 1043. The court found the delegation was clear and

20   unmistakable, but the lack of the carveout in the arbitration clause itself distinguishes *Steppechange*.

21       Similarly, Defendants briefly quote *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th

22   Cir. 2013) to note that other circuits have held that incorporation of arbitration rules constitutes clear

---

[2] Defendants' claim that the carveout speaks only of certain remedies or forms of relief, Mot. at 21-22, is belied by the text, which carves out not remedies, but *proceedings* from the dispute subject to the provision. "Proceedings" and "actions" are distinct from the claims, remedies, or forms of relief within them. *Compare* BLACK'S LAW DICTIONARY, "Proceeding" (11th ed. 2019) ("**1.** The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment."), *and id.*, "Action" ("**4.** A civil or criminal judicial proceeding."), *with id.*, "Relief" ("The redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court. — Also termed *remedy*. Cf. REMEDY."), *and id.*, "Remedy" (" **1.** The means of enforcing a right or preventing or redressing a wrong; legal or equitable relief.").

1    and unmistakable evidence that the parties agreed to arbitrate arbitrability. While the *Oracle America*

2    arbitration clause *did* contain a carveout, the court found that the carved-out claims were inherently, "by

3    definition," claims covered by the arbitration clause. *Id.* at 1075-76. Specifically, that clause stated:

> Any dispute arising out of or relating to this [Source] License shall be finally settled by
> arbitration as set out herein, except that either party may bring any action, in a court of
> competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute
> relating to such party's Intellectual Property Rights or with respect to Your compliance
> with the TCK license. Arbitration shall be administered: (i) by the American Arbitration
> Association (AAA), (ii) in accordance with the rules of the United Nations Commission
> on International Trade Law (UNCITRAL) (the "Rules") in effect at the time of
> arbitration as modified herein; and (iii) the arbitrator will apply the substantive laws of
> California and United States.

9    *Id.* at 1071. The court explained, "Enforcement of … intellectual property rights is restricted by the

10    Source License. And the TCK License is part of the Source License. Thus, by definition, the claims

11    excepted from arbitration by the carve-out clause are claims 'arising out of or relating to' the Source

12    License." *Id.* at 1076. In other words, the rule inherently covered the exception. As other courts within

13    and outside the Ninth Circuit have observed, *Oracle America* involved a unique "circularity" such that

14    its holding—that the parties delegated arbitrability by incorporation of arbitration rules, carveout

15    notwithstanding—does not apply beyond the facts of that case. *See, e.g.*, *Archer & White Sales*, 935

16    F.3d at 281 n.30 ("The *Oracle America* court noted that the issue with Oracle's carve-out argument was

17    that the two categories of exempted claims by definition were claims arising out of or relating to the

18    Source License, which were explicitly subject to arbitration. No such circularity exists in the contract at

19    issue here.") (citation omitted); *Maguire Ins. Agency, Inc.*, 2023 U.S. Dist. LEXIS 12313 at *23-24

20    ("[T]he arbitration provision and carve-out in *Oracle America* involved a circularity that sets them apart

21    from those at issue here.").

22    Finally, Defendants argue in a footnote that the carveout "says nothing about arbitrability or

23    delegating questions of arbitrability." (Mot. at 13 n.2.) Of course, the *entire arbitration clause* "says

24    nothing about arbitrability or delegating questions of arbitrability," only referencing AAA rules for

25    proceedings subject to arbitration. But to the extent incorporation of AAA rules allows an inference of a

26    delegation, the carveout is as an exception to that delegation. Grammatically, the AAA rules only

27    govern "adversarial proceedings" that are *not* part of the parenthetical carveout. Because this

28    proceeding is within the carveout, the AAA rules are not involved.

1    Regardless, the absence of an explicit reference to "arbitrability or delegating questions of

2    arbitrability" in the entire arbitration clause is another reason—beyond the carveout—why any possible

3    delegation is not clear and unmistakable, as explained below.

4    **B.      Plaintiffs lack the sophistication to understand that the mere
            mention of arbitration rules deprives them of court review.**

5

6            **1.      The greater weight of authority—and better-reasoned
                    authority—in this district considers sophistication.**

7            Consider for a moment if we could present the ISA arbitration clause to a representative cross-

8    section of the population. Then consider asking each individual, "Does this text *clearly and*

9    *unmistakably* say that only an arbitrator, not a court, can decide whether a lawsuit must be arbitrated?"

10   Nearly everybody would either answer "No," because there is nothing *clear and unmistakable* about

11   what this clause is trying to say to a lay person, or answer "I don't know," because they would not

12   understand enough about the esoteric subject matter to feel comfortable answering. The remaining

13   respondents who *might* (only might) answer "Yes," based on the clause's reference to AAA rules,

14   would be the miniscule sliver of the population who deals with arbitration clauses professionally.

15           Deciding that the law must account for how nearly everyone would (or would not) understand

16   this type of arbitration clause, in recent years the greater weight of authority in this district and

17   elsewhere considers the sophistication of the parties when determining whether an agreement

18   incorporating AAA rules delegates arbitrability. That is, "the **majority** of the lower courts in the Ninth

19   Circuit have held that incorporation of the AAA rules [is] insufficient to establish delegation in

20   consumer contracts involving at least one unsophisticated party." *Eiess v. USAA Fed. Sav. Bank*, 404 F.

21   Supp. 3d 1240, 1253 (N.D. Cal. 2019) (emphasis added; collecting cases); *MacClelland v. Cellco*

22   *P'ship*, 609 F. Supp. 3d 1024, 1031 (N.D. Cal. 2022) ("Where at least one party is unsophisticated,

23   courts in this district and elsewhere have routinely found that the incorporation of the AAA rules is

24   insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability.").[3]

25   ---
     [3] *See also Alfia v. Coinbase Glob., Inc.*, 2022 U.S. Dist. LEXIS 130559, at *6 n.6 (N.D. Cal. July 22, 2022) ("In

26   the context of consumer contracts involving at least one unsophisticated party, the Court is not persuaded that
     incorporating the [AAA] rules amounts to a clear and unmistakable delegation ….."); *Blair v. Inform Software*

27   *Corp.*, 2023 U.S. Dist. LEXIS 3032, at *11 (N.D. Cal. Jan. 8, 2023) ("The generic reference to AAA rules is
     insufficient."); *Magill v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 248891, *15 (N.D. Cal. June 25, 2021)

28   ("Where at least one party is unsophisticated, judges in this district routinely find that the incorporation of the

This parade of cases accounts for sophistication precisely because the standard demands that any delegation of arbitrability must be "clear and unmistakable" to the *actual parties* to the agreement. Mere incorporation of AAA rules cannot realistically be a clear and unmistakable delegation to ordinary consumers because they "could not be expected to understand that the incorporation of the AAA rules would mean that the overwhelming majority of disputes … would be resolved by an arbitrator." *Magill*, 2021 U.S. Dist. LEXIS 248891, at *16. "For an unsophisticated plaintiff to discover she had agreed to delegate gateway questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity—a question the Supreme Court itself has deemed 'rather arcane.'" *Eiess*, 404 F. Supp. 3d at 1253 (quoting *First Options of Chi., Inc.*, 514 U.S. at 945); *see also MacClelland*, 609 F. Supp. 3d at 1032 (N.D. Cal. 2022) ("The AAA Rules are not quoted or appended to the Agreement. Common customers … should not be expected to understand that the incorporation by reference of the AAA rules—without spelling out the actual provision—would mean that the validity and enforceability of the arbitration provision would be resolved by an arbitrator rather than a court, a result contrary to common expectation.")

Thus, considering sophistication is "in keeping with the general presumption against delegation of gateway questions of arbitrability to the arbitrator." *Eiess*, 404. F. Supp. 3d at 1253 (citation

---

AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability," and holding the same); *Fauceglia v. Univ. of S. Cal.*, 2021 U.S. Dist. LEXIS 87530, at *13 (C.D. Cal. Mar. 29, 2021) ("[T]here is no evidence that plaintiff has training or experience working as a lawyer. … Under the circumstances here, the incorporation of the AAA rules is insufficient to constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Murray v. Under Armour, Inc.*, 2019 U.S. Dist. LEXIS 231532, at *10 (C.D. Cal. Feb. 11, 2019) ("[I]ncorporation of the AAA rules, standing by itself, does not amount to clear and unmistakable evidence that the parties agreed to arbitrate arbitrability if one of the parties is an ordinary consumer."); *Ingalls v. Spotify USA, Inc.*, 2016 U.S. Dist. LEXIS 157384, *9-10 (N.D. Cal. Nov. 14, 2016) ("In the absence of binding authority and with the benefit of a consistent trend of persuasive authority, this order finds that the parties, which included two ordinary consumers who could not be expected to appreciate the significance of incorporation of the AAA rules, did *not* clearly and unmistakably intend to delegate the issue of arbitration …."); *Money Mailer, LLC v. Brewer*, 2016 U.S. Dist. LEXIS 47928, at *5-7 (W.D. Wash. Apr. 8, 2016) (incorporation of AAA rules not clear and unmistakable delegation where one party was sophisticated); *Vargas v. Delivery Outsourcing, LLC*, 2016 U.S. Dist. LEXIS 32634, at *21 (N.D. Cal. Mar. 14, 2016) ("The Court concludes that incorporation of AAA's rules does not evince a 'clear and unmistakable' intent to delegate disputes involving unsophisticated employees."); *Meadows v. Dickey's Barbecue Rests., Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) ("[A]n inquiry about whether the parties clearly and unmistakably delegated arbitrability by incorporation should first consider the position of those parties.").

omitted); *see also Meadows*, 144 F. Supp. 3d at 1078 ("[T]he question is whether the language of an agreement provides 'clear and unmistakable' evidence of delegation. To a large corporation (like Oracle) or a sophisticated attorney (like Brennan), it is reasonable to conclude that it does. But applied to an inexperienced individual, untrained in the law, such a conclusion is likely to be much less reasonable.").

As in these cases, Plaintiffs are not sophisticated enough for any purported delegation to be clear and unmistakable. In this context, sophisticated parties are limited to those with specialized training or experience in law or business, such that they could understand that incorporation of AAA rules delegates questions of arbitrability. *See, e.g.*, *Fauceglia*, 2021 U.S. Dist. LEXIS 87530 at *13-14 (finding plaintiff, although an "intelligent physician," unsophisticated for purposes of delegation question because "there is no evidence she has training or experience working as a lawyer"); *Ingalls*, 2016 U.S. Dist. LEXIS 157384 at *10 (plaintiffs in putative class action, "a music teacher and an architect," held to be "two ordinary consumers who could not be expected to appreciate the significance of incorporation of the AAA rules" which therefore "did *not* clearly and unmistakably intend to delegate the issue of arbitration to an arbitrator") (emphasis in original); *Meadows*, 144 F.Supp.3d at 1078-79 ("Neither [plaintiff] had prior experience running a business or owning a franchise. There is no evidence that any Plaintiff had legal training or experience dealing with complicated contracts.").

In a discussion devoid of any precedent, Defendants label Plaintiffs sophisticated due to their research into Lambda before enrolling. (Mot. at 18-19.) But Plaintiffs' diligence is irrelevant—the question is whether Plaintiffs had sufficient *legal or business* experience or training to understand the significance of AAA rule incorporation. There is no evidence here that Plaintiffs had such training or experience. Each sought a new career in tech at the time they signed their ISAs, coming from various fields unrelated to the law, arbitrations, or complicated contracts. (*See* Compl. at ¶¶ 107, 117, 125, 134.) Without such training or experience, the ISAs' arbitration clause did not "clearly and unmistakably" delegate questions of arbitrability to Plaintiffs.

1

2

2.      **Defendants' sophistication discussion misapplies distinguishable cases.**

3

Defendants' sophistication discussion is unpersuasive for several reasons. As an initial matter,

4

they describe the litany of cases considering sophistication as a mere "smattering of authority" (Mot. at

5

17), a substantial mischaracterization of the state of the law described above.

6

Second, Defendants rely on distinguishable cases where the court held that all parties to the

7

agreement *were* sophisticated or where the court did not discuss sophistication at all. *See e.g.*, *Gerlach*

8

*v. Tickmark Inc.*, 2021 U.S. Dist. LEXIS 141105, at *15 (N.D. Cal. July 28, 2021) ("[T]he Court does

9

not find plaintiff to be a non-sophisticated party."); *Marriott Ownership Resorts, Inc. v. Flynn*, 2014

10

U.S. Dist. LEXIS 171722, at *19-28 (D. Haw. Dec. 11, 2014) (pre-dating *Brennan* and finding

11

delegation of arbitrability without discussing sophistication). That *sophisticated* parties may be bound

12

by reference to the AAA rules under *Brennan* says little about its application to *non-sophisticated*

13

parties, an issue explicitly left open in *Brennan*.

14

Third, unlike the ISAs at issue here, the arbitration provisions in cases cited by Defendants often

15

explicitly encompassed questions or disputes about the "validity" of the agreement or

16

"appropriate[ness]" of arbitration. *See e.g.*, *Maybaum v. Target Corp.*, 22-cv-00687-MCS-JEM, 2022

17

U.S. Dist. LEXIS 80466, at *3 (C.D. Cal. May 3, 2022) (agreement included clause concerning the

18

"**validity** of [the agreement's] Terms and Conditions") (emphasis added); *Miller v. Time Warner Cable*

19

*Inc.*, 16-cv-00329-CAS, 2016 U.S. Dist. LEXIS 179444, at *13 (C.D. Cal. Dec. 27, 2016) ("[The]

20

Agreement explicitly provides that 'claims relating to whether arbitration is **appropriate** … will be

21

decided by an arbitrator, not a court.'") (emphasis added).

22

This distinction—between clauses explicitly and specifically mandating arbitration for disputes

23

over the "validity" of the agreement, versus clauses generically mandating arbitration for "any" or "all"

24

disputes and incorporating AAA rules—is crucial to an unsophisticated party. To an unsophisticated

25

party, a clause explicitly stating that an arbitrator, not a court, must determine the validity of an

26

arbitration agreement can be clear and unmistakable, unlike agreements requiring some combination of

27

inferences and independent research into AAA rules.

28

For this reason, courts analyzing *both* types of arbitration agreements hold that only the agreements explicitly discussing validity disputes delegate the threshold question of arbitrability. In *Meadows v. Dickey's Barbecue Rests., Inc.*, for example, the court found that one agreement including validity disputes clearly and unmistakably delegated arbitrability, while another agreement's mere incorporation of AAA rules was an insufficient delegation as to the unsophisticated plaintiffs:

> Agreements entered into by [some plaintiffs] state that the **validity** of the Agreement or any provision of it must be submitted to arbitration. The Court … concludes that this language clearly and unmistakably indicates the parties' intent to delegate the threshold issue of arbitration. … [Other plaintiffs'] Agreements are another story. **Those agreements do not contain the same clause delegating decisions about the validity of the Franchise Agreement or any of its provisions.** Instead, they state that "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform *arising out of or relating to* this Agreement" are subject to arbitration. … Because the language that disputes "arising out of or relating to" the Franchise Agreement is so broad, it might theoretically encompass the threshold issue of arbitrability. But it does not rise to the level of "clear and unmistakable evidence" of delegation required to defeat the presumption that the court, not the arbitrator, will decide the issue of arbitrability.

144 F. Supp. 3d at 1077 (citations omitted, italics in original, bolding added).

In this light, Defendants' argument concerning *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016) falls flat. Defendants argue that *Mohamed* implicitly endorsed Defendants' view that sophistication is irrelevant because the court did not discuss sophistication at all. (Mot. at 15.) First, this contention ignores the general principle that "[q]uestions that merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Garcia v. Gateway Hotel L.P.*, 82 F.4th 750, 760 (9th Cir. 2023) (quoting *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004)). Moreover, the contract in *Mohamed* explicitly required arbitration regarding the "**enforceability, revocability or validity**" of the agreement—*i.e.* something unsophisticated parties could understand as delegating arbitrability—unlike the mere mention of AAA rules. *Id.* at 1208-09 (emphasis added). Defendants' preferred takeaway is also undermined by the extensive volume of cases from lower courts in the Ninth Circuit that have considered sophistication *after Mohamed*. *See* Part I.B.1., *supra.* Clearly these courts did not consider *Mohamed's* silence on sophistication to be binding (or even persuasive). *See e.g.*, *Eiess*, 404 F. Supp. 3d at 1253 (post-dating *Mohamed* by three years and noting majority of lower courts in Ninth Circuit

have held incorporation of AAA rules insufficient to delegate arbitrability when at least one party is unsophisticated).

Fourth, Defendants cite two cases for the proposition that considering sophistication is unworkable in the class context. (*See* Mot. at 15-16 (citing *McLellan v. Fitbit, Inc.*, 2017 U.S. Dist. LEXIS 168370 (N.D. Cal. Oct. 11, 2017) and *Diaz v. Intuit, Inc.*, 2017 U.S. Dist. LEXIS 162968 (N.D. Cal. Sep. 29, 2017).) But both *McClellan* and *Diaz* were decided in 2017, just two years after *Brennan*, and in the six years since, a host of courts have readily considered sophistication of named plaintiffs in putative class actions, with no indication that an analysis of the plaintiffs' sophistication is somehow unworkable. *See, e.g.*, Part I.B.1, *supra* (citing *MacClelland*, 609 F. Supp. 3d 1024; *Alfia*, 2022 U.S. Dist. LEXIS 130559; *Magill*, 2021 U.S. Dist. LEXIS 248891; *Eiess*, 404 F. Supp. 3d 1240; *Murray*, 2019 U.S. Dist. LEXIS 231532). Again, the relevant question is whether Plaintiffs had sufficient legal or business experience or training to understand the significance of AAA rules incorporation, and the answer here is a clear no.

Fifth, when Defendants finally admit that district courts have found that incorporation of AAA rules is not a clear and unmistakable delegation of arbitrability for unsophisticated parties, they attempt to draw distinctions for clickwrap agreements, or what Defendants term "form agreements." (Mot. at 17-18.) But multiple cases, ignored by Defendants, did not involve these types of agreements yet *still* found that incorporation of AAA rules was not a clear and unmistakable delegation of arbitrability for unsophisticated parties. *See, e.g.*, *Vargas*, 2016 U.S. Dist. LEXIS 32634, at *3 (7-page employment agreement); *Fauceglia*, 2021 U.S. Dist. LEXIS 87530, at *2 (employment agreement).

As for the cases that do involve clickwrap agreements, nothing in these courts' analyses indicate that such agreements should be treated differently from other agreements involving unsophisticated parties. *See e.g.*, *Blair*, 2023 WL 137471, at *5 (citing proposition that relevant agreement's "generic reference to AAA rules is insufficient" without consideration of clickwrap characteristics); *MacClelland*, 609 F. Supp. 3d at 1029-32 (relying on line of cases since *Brennan* finding incorporation of AAA rules insufficient, without regard to wireless consumers at issue being "required to accept"

activation agreement); *Alfia*, 2022 WL 3205036, at *2 n.6 (considering clickwrap agreement but not drawing distinction between agreement types).

Defendants' attempt to limit *Eiess's* reasoning to "form agreements" (a phrase not used in the *Eiess* opinion) is similarly unavailing. In *Eiess*, the court instead simply explained that courts must take a different approach for unsophisticated parties compared to sophisticated parties when determining whether parties delegated gateway questions of arbitrability. 404 F. Supp. 3d at 1253. Furthermore, the ISAs at issue here *are* adhesion contracts or, to use Defendants' phrase, "form agreements." They were presumably drafted by Defendants (or their lawyers) and presented to Plaintiffs on a take-it-or-leave-it basis. Thus, Defendants' "form agreement" argument if anything *reinforces* Plaintiffs' position.

If there is anything to take from Defendants' cases, it is that lower courts have decided that *sophisticated* parties are bound by reference to the AAA provisions under *Brennan*, but that agreements involving *unsophisticated* parties *may* delegate arbitrability, but only when the delegating language is explicit, such as by incorporating validity disputes—not merely by incorporating AAA rules. Because the arbitration clause here lacks an explicit delegation, this Court must determine arbitrability.

## II. The unambiguous language of the ISA shows that this proceeding is not subject to arbitration.

Because there is no delegation to the arbitrator, the Court "must determine two 'gateway' issues when deciding whether to compel arbitration: (1) whether there is an agreement to arbitration; and (2) whether the agreement covers the dispute." *Diaz v. Intuit, Inc.*, 2017 U.S. Dist. LEXIS 162968, at *9 (citing *Brennan*, 796 F.3d at 1130). As described in Part III, *infra*, for three of the four plaintiffs, there is no valid agreement to arbitrate. But this Court need not even address this issue because the ISAs' plain language squarely decides the second gateway question against arbitration for all four plaintiffs.

### A. The plain language of the ISA exempts "proceedings seeking an injunction, a restraining order, or any other equitable remedy," which this proceeding indisputably does.

Once again, the operative language here is clear and unambiguous:

As the exclusive means of ***initiating adversarial proceedings*** to resolve any dispute arising out of this agreement, your Lambda School tuition, or your payments to Lambda School (***other than any proceeding commenced by either party seeking an injunction, restraining order, or any other equitable remedy*** *or a proceeding commenced by either*

1      *party in small claims court*), either party may demand that the dispute be resolved by
2  binding arbitration ….

(Compl. Exhs. A-D (emphasis added).) Defendants focus on the language "any dispute" to suggest that

3  any *case* must be arbitrated if it, like this one, concerns the ISAs, tuition, or payments. But

4  grammatically the contract does not prescribe what *disputes* are subject to arbitration, it prescribes what

5  *proceedings* are. The "any dispute" language is subordinate to the actual subject of the clause: "the

6  exclusive means of initiating adversarial proceedings."

7      Read correctly, then, the question is whether this is a "proceeding" subject to arbitration. The

8  parenthetical carveout answers this clearly: It is not. The carveout states, without limitation, that "any

9  proceeding commenced by either party seeking an injunction, restraining order, or any other equitable

10  remedy" is *not* among those subject to the clause. This is plainly such a proceeding.[4]

11      The plain language is definitive, but even if it were not, canons of contract construction favor

12  Plaintiffs too. Defendants cite the principle that the specific must govern over the general (Mot. at 27

13  (citing *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 21 (2012)) arguing that the carveout is

14  somehow the general provision and the "any dispute" language on which they rely is the specific.

15  Plaintiffs agree that the principle applies here, but Defendants have it precisely backwards. The *general*

16  language of the clause makes arbitration "the exclusive means of initiating adversarial proceedings" but

17  the carveout exempts a subset of two *specific* types of proceedings, those seeking equitable relief and

18  those in small claims court.

19      Courts must also construe contracts to avoid surplusage. Cal Civ. Code § 1641; *Berg v. Mtc*

20  *Elecs. Techs. Co.*, 71 Cal. Rptr. 2d 523, 530 (Cal. Ct. App. 1998). By its terms, the arbitration clause

21  *only* concerns three types of cases: disputes "arising out of the [ISA], [a student's] Lambda School

22  tuition, or [a student's] payments to Lambda School." Yet Defendants repeatedly insist that *any* dispute

23  concerning these three subjects must be subject to arbitration despite the parenthetical. (Mot. at 21-22,

24  26-27.) In other words, say Defendants, the carveout does nothing. This reading cannot be sustained.

25

---

26  [4] Out of an abundance of caution, Plaintiffs have exclusively requested equitable and injunctive relief, but they
27  need not have done so when the provision is read according to its plain language, rendering Defendants'
   extensive arguments about whether certain of Plaintiffs' claims are *actually* equitable, Mot. at 29-33, irrelevant.
28  *See* Part II.D., *infra*.

For the same reason, Defendants' approach, not Plaintiffs', leads to absurd results. If, as Defendants posit, *any* case involving the ISAs, tuition, or payments must be sent to arbitration regardless of the carveout, the exemption for small claims proceedings has no meaning whatsoever. Indeed, Plaintiffs Goncalves and McAdams could have elected to pursue claims for their payments under the ISAs in California Small Claims Court. *See* Cal. Code Civ. P. § 116.221. On Defendants' reading, because such a claim would concern their "Lambda School tuition ... and payments to Lambda School," it, too, would subject to arbitration despite the parenthetical. This reading makes no sense and should be rejected.

In sum, the plain language exempts this proceeding from arbitration, as do basic principles of contract interpretation. This is enough to end the Court's inquiry. Nevertheless, Defendants spend pages on pages pursuing atextual arguments that the contract must mean *something* other than the words on the page. Each one fails.

**B.      Defendants could have used an arbitration clause without a <u>carveout and have done so before, but chose not to do so here.</u>**

Defendants make hay out of the fact that one of Plaintiffs' counsel, NLSDN, has pursued individual cases and arbitrations against Defendants and now pursue a "larger case" here. (Mot. at 10.) The reason those prior cases were individual arbitrations and this one is a class action makes sense: NLSDN's prior clients' ISAs had arbitration clauses with no carveouts.

As the Court knows, Plaintiffs themselves and the class they seek to represent have ISAs containing arbitration clauses with carveouts for equitable claims or no arbitration clause at all. (Compl. ¶¶ 6, 142.) Plaintiffs believe—and the declaration of BloomTech's Data Science and Analytics Manager Steven Will seems to confirm (Doc. 32-1 ¶ 3)—that Defendants started using ISAs with carveouts for equitable relief in March 2020.

Prior to then, Defendants worked with a different loan servicer, Leif, and used form agreements that contained arbitration clauses with a carveout only for small claims court:

> ARBITRATION OF CLAIMS AGAINST COMPANY. Except as expressly provided below, Obligor agrees that any Claim against the Company shall be submitted to and resolved by binding arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1 et seq., before the American Arbitration Association ("AAA") under its Consumer Arbitration Rules then in effect (the "AAA Rules," available online at www.adr.org). ... For purposes of this Arbitration Agreement: (a) the term "Claim" has the broadest

possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). For purposes of this Arbitration Agreement; (b) the term "Company" includes: (i) the Company; (ii) any assignee of this Agreement; (iii) any assignee, agent, designee or servicer of the Company (including, but not limited to, Leif): (iv) the officers, directors, employees, affiliates, subsidiaries, and parents of all of the foregoing; and (v) any Person named as a co-defendant with Company in a Claim asserted by Obligor, such as servicers and debt collectors. Notwithstanding the foregoing, if a Claim that Obligor wishes to assert against Company is cognizable in a small claims court (or your state's equivalent court) with jurisdiction over the Claim and the parties, Obligor or Company may pursue such Claim in such court; provided, however, that if the Claim is transferred, removed, or appealed to a different court, it shall then be resolved by arbitration, as provided herein. ...

Baltmanis Decl. at ¶ 2, Ex. A., Bruner ISA, at 10.

Defendants (or their lawyers) presumably drafted both this Leif agreement and those of the Plaintiffs in this case. Simply put, Defendants know how to write an arbitration clause without an exception for equitable proceedings and for some reason chose not to. They may regret that now, but the Court should not relieve them of this choice by rewriting the contract.

### C.   The plain language answers the question, but even if it does not, case law favors Plaintiffs as well.

Arbitration is a matter of contract and courts are bound to enforce arbitration agreements "according to their terms." *Henry Schein, Inc.*, 139 S. Ct. at 529. Defendants try to contort the agreement as limited to injunctions in aid of arbitration (Mot. at 22-24) and cite cases they claim support this reading. The Ninth Circuit cases on which Defendants rely, *Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482 (9th Cir. 2020) and *Comedy Club, Inc. v. Improv W. Associates*, 553 F.3d 1277 (9th Cir. 2009) involve easily distinguishable contract language explicitly contemplating limited equitable relief in aid of arbitration. By contrast, cases involving the sort of broad equitable carveout at issue here overwhelmingly read and enforce those contracts by their plain language, permitting plaintiffs to pursue equitable claims in court. This Court should do the same.

### 1.   The Ninth Circuit decisions cited by Defendants are based on distinguishable contract language.

Defendants cite two Ninth Circuit cases to support their cramped reading of the carveout. Neither is controlling nor persuasive.

In *Dohrmann*, the contract provided that "any dispute or claim … will be resolved by binding arbitration," but that "***any party to the arbitration*** may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction." 823 Fed. App'x at 484 (emphasis added). Relying on its prior decision in *Comedy Club*, the court reasoned that the "[t]he language 'any party to the arbitration,' 'suggests that arbitration still applies to all disputes, but that in addition, the parties are entitled to pursue equitable remedies before courts.'" *Id.* at 485 (quoting *Comedy Club*, 553 F.3d at 1285) (cleaned up). This reading makes sense: the equitable relief provided for in the agreement is available *only* to "part[ies] to the arbitration," in stark contrast to the language here where "any proceeding" seeking equitable relief (or brought in small claims court) is carved out.

*Comedy Club* is in accord. There, the operative language stated "[a]ll disputes relating to or arising under [the transactions at issue] shall be resolved by arbitration," while also providing that "[T]he parties, ***in addition to arbitration***, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose and for the purpose of compelling arbitration and/or enforcing any arbitration award." *Comedy Club*, 555 F.3d at 1281-82 (emphasis added). The court explicitly distinguished a broad carveout, like the one here, from a carveout aimed at equitable relief in aid of arbitration:

> The language "in addition to arbitration" in clause two suggests that arbitration still applies to all disputes, but that in addition, the parties are "entitled to pursue equitable remedies" before courts. ***If the parties intended to carve out an exception to arbitration for all equitable claims, they could have done so without the language "in addition to arbitration."*** Because the parties included this language, it is plausible and a permissible contract interpretation that the equitable claims exception in clause two was intended to apply only to claims designed to maintain the status quo between the parties. Stated another way, it was a rational interpretation of the agreement to say that the arbitrator could decide both equitable and legal claims and that the provision for court jurisdiction on equitable matters was ancillary to the arbitration.

*Id.* at 1285 (emphasis added).

*Comedy Club*, in fact, compels *denial* of Defendants' motion because here, as *Comedy Club* suggests they could, the parties *did* carve out an exception without the language "in addition to arbitration." Defendants knew how to use an arbitration clause without a carveout and had done so before, *see supra* Part II.B., and had guidance from the Ninth Circuit on how to draft a provision for

1  equitable relief in aid of arbitration. Instead, they chose to use agreements with a broader exemption,

2  and the Court should hold them to it now.

3       Neither *Dohrmann* nor *Comedy Club* supports Defendants' position, nor does any other Ninth

4  Circuit or Supreme Court case that Plaintiffs have found, and Defendants cite none.

5              **2.      Cases considering similar language overwhelmingly
6                       support Plaintiffs' interpretation.**

7       In the absence of controlling case law, the Court should look to cases that, unlike *Dohrmann*

8  and *Comedy Club*, involve carveouts written in broad terms like the ISAs here. Focusing on cases

9  dealing with similar arbitration clauses, the case law overwhelmingly supports a plain-language reading

10 of the provision and rejection of arbitration.

11      The Fifth Circuit's decision in *Archer & White Sales, Inc.*, is exemplary. As noted above, *see*

12 Part I.A, the provision in question, like the one here, contained a carveout for "actions seeking

13 injunctive relief." 935 F.3d at 282. Similarly, the provision had a clause incorporating the AAA rules.

14 *Id.* After rejecting the defendant's argument that the contract delegated arbitrability questions to the

15 arbitrator, the district court *also* held that the carveout meant the case was not subject to arbitration. *Id.*

16 at 283. The Fifth Circuit affirmed based on the plain language of the agreement.

17      In doing so, it rejected several arguments Defendants raise here. For instance, defendants in

18 *Archer & White* "warn[ed] that Archer's interpretation allows a party to 'tack on' a vague request for

19 injunctive relief to evade arbitration." *Id.*  The court disagreed based on the plain language:

20          We note first that the arbitration clause creates a carve-out for "actions seeking injunctive
            relief." It does not limit the exclusion to "actions seeking *only* injunctive relief," nor
21          "actions for injunction in aid of an arbitrator's award." Nor does it limit the carve-out to
            *claims* for injunctive relief. Such readings find no footing within the four corners of the
22          contract. … The mere fact that the arbitration clause permits Archer to avoid arbitration
            by adding a claim for injunctive relief does not change the clause's plain meaning. "While
23          ambiguities in the language of the agreement should be resolved in favor of arbitration,
            we do not override the clear intent of the parties, *or reach a result inconsistent with the*
24          *plain text of the contract*, simply because the policy favoring arbitration is implicated."[]
            Fundamentally, defendants ask us to rewrite the unambiguous arbitration clause. We
25          cannot.

26 *Id.* (quoting *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002)) (emphasis added in *Archer & White*).

27 Notably, the court held the presumption in favor or arbitration was irrelevant due to the lack of

ambiguity. For the same reason, the court rejected the same "absurd results" argument Defendants raise here. *Id.*

*Frydman v. Diamond*, 2015 U.S. Dist. LEXIS 120774 (S.D.N.Y. 2015), presented similar questions with nearly identical language and reached the same result. There, the parties entered into an initial, broad arbitration clause without exemption, but subsequently amended it to provide

> Should any dispute arise between the Parties which gives rise to injunctive or equitable relief pursuant to the terms of [the current or prior agreements], then notwithstanding anything else contained in such agreements, the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court of competent jurisdiction, and each of the other Parties hereby consent to same and shall not seek to dismiss or move such action to arbitration or other adjudication.

*Id.* at *5. The defendants seeking to compel arbitration nonetheless argued that the provision was a "standard 'aid of arbitration' provision," *id.* at *6, also arguing that "plaintiff's interpretation … would render the parties' agreement to arbitrate meaningless because any party could avoid arbitration by simply including any type of claim of injunctive or equitable relief," *id.* at *15.  The court rejected the argument based on the plain language of the agreement. *Id.* at *15-17. It noted that the language—like that of the ISAs here—differed from the AAA's model language for "aid of arbitration" provisions, which explicitly state that the equitable or injunctive action is for such a purpose. *Id.* at *17.  The court also observed that the parties had previously entered another arbitration agreement that explicitly limited court actions only to preserve the status quo. *Id.* at *18. In other words, just as in this case, the parties moving to compel arbitration knew how to and had previously entered into clauses without a broad carveout, but had later entered into equitable carveouts without limitation.

*Archer & White* and *Frydman*, unlike *Dohrmann* and *Comedy Club*, are on all fours with this case. In both cases the contracts exempted "actions" seeking injunctions without limitation, just as the ISAs here do with regard to "proceedings." *See* note 2, *supra* (distinguishing "actions" and "proceedings" from "relief" or "remedies"). In those cases, as here, the clauses unambiguously exempt the action/proceeding brought, requiring denial of the motion to compel.

Many other cases follow the same course when dealing with broad carveouts for injunctive or equitable relief like the one here. *See, e.g.*, *United States v. Miraca Life Scis., Inc.*, 2021 WL 679275, at *3 (M.D. Tenn. Feb. 22, 2021) (rejecting motion to compel arbitration where clause read

---

1  "[n]otwithstanding [the arbitration clause], each party shall be entitled to seek injunctive or other

2  equitable relief in any court of competent jurisdiction without first submitting the matter to mediation or

3  arbitration …."), *aff'd sub nom. United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352 (6th

4  Cir. 2022); *Baker v. Montrone*, 18-cv-0913-PB, 2020 U.S. Dist. Lexis 4340 at *24 (D.N.H. Jan. 10,

5  2020) (rejecting motion to compel arbitration where clause contained carveout for "any party to this

6  Agreement required [sic] immediate injunctive relief or other equitable relief," reasoning that

7  "[b]ecause [the carveout] applies broadly to all claims for equitable relief, I cannot rewrite the parties'

8  agreement to frame it as merely an aid in arbitration provision").

9       Lambda's persuasive authority, by contrast, is almost universally distinguishable. Scrutinizing

10  the arbitration clauses at issue, each differs from the language here by either containing broader clauses

11  encompassing all "disputes" or "claims" rather than certain "proceedings" or "actions"; language

12  specifying that only *certain* types of equitable remedies could be sought in court; or both:

13  - In *Farr v. Acima Credit LLC*, the arbitration clause took the form of a Q&A stating
"All Disputes" were covered; that "the word 'Disputes' has the broadest possible
14    meaning"; and that a signatory was waiving the right to "[h]ave courts, other than
small-claims courts, solve Disputes." 20-CV-8619-YGR, 2021 U.S. Dist. Lexis
15    126431, at *4 (N.D. Cal. July 7, 2021). The court thus found that a brief reference to
other "remedies" including "pre-judgment seizure, injunctions, or equitable relief"
16    must be limited to equitable relief in aid of arbitration due to the breadth of the
"Disputes" covered. By contrast, here, the clause carves out "proceedings" seeking
17    equitable relief without limitation. *Id.* at *9-15.

18  - In *Auntie Anne's, Inc. v. Wang*, the franchise agreement at issue had a limited
carveout allowing equitable relief in court only to protect trademarks, trade secrets,
19    copyrights, and other intellectual property. CV 14-01049, 2014 WL 117287222014
U.S. Dist. LEXIS 198807, at *6-8, 28-32 (C.D. Cal. July 16, 2014). The equitable
20    carveout here contains no limitations. *See also McKesson Corp. v. Health Robotics,
S.R.L.*, C-11-00728, 2011 U.S. Dist. LEXIS 81192, at *7-8, *22-25 (N.D. Cal. July
21    26, 2011) (carveout limited to intellectual property rights).

22  - In *Starnes v. Harrell Indus., Inc.*, the contract provided that "ALL DISPUTES,"
without limitation, must be arbitrated, but distinguished between different types of
23    *remedies*, stating that those brought in equity could be brought before the court, and
others in arbitration. CA 0:13-01109-JFA, 2013 U.S. Dist. LEXIS 183085 at *3-4
24    (D.S.C. Aug. 30, 2013), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS
2551 (Jan. 9, 2014). Based on this language, the court concluded that an ADA claim
25    must first go to arbitration for a liability and damages determination, followed by
court litigation of equitable remedies. *Proulx v. Brookdale Living Communities Inc.*,
26    88 F. Supp. 3d 27, 33-34 (D.R.I. 2015) reached a similar conclusion based on similar
language. By contrast, as discussed above, *supra* at Part II.A, Defendants are wrong
27    that the ISAs' carveout is limited to certain remedies, when in fact the carveout
concerns types of "proceedings."

28

- The arbitration clause in *Tabas v. MoviePass, Inc.*, similarly governed "any dispute, claim or controversy" "with the exception of either party seeking injunctive or equitable relief as specified below." 401 F. Supp. 3d 928, 938 (N.D. Cal. 2019). The court cited no language regarding the *types* of equitable claims specified and it appears the contract had none, allowing the court to conclude, as in *Comedy Club*, "If the parties intended to carve out equitable claims, they could have done so more clearly by including an exception within the arbitration clause itself." *Id.* at 939. Here, of course, there *is* such an exception within the arbitration clause itself for "any proceeding" seeking equitable relief.

- *DXP Enterprises, Inc. v. Goulds Pumps, Inc.* similarly involved contractual language regarding "any controversy or claim" between the parties, while containing a carveout for "the imposition of an equitable remedy …." No. H-14-1112, 2014 U.S. Dist. LEXIS 156158, at *3-4 (S.D. Tex. Nov. 4, 2014). The same is true of *Cont'l Materials, Inc. v. Veer Plastics Private Ltd.*, 22-cv-3685, 2023 U.S. Dist. LEXIS 59703, at *2-3 (E.D. Pa. Apr. 5, 2023), where the agreement required arbitration of "[a]ny dispute, controversy or claim" but carved out "equitable relief." Again, the ISA language here is different, with the carveout distinguishing between "proceedings" rather than disputes, claims, or remedies. *See also Clarus Med., LLC v. Myelotec, Inc.*, CIV. 05-934, 2005 U.S. Dist. LEXIS 30540, at *7 (D. Minn. Nov. 30, 2005) (contract requires arbitration of "any and all disputes" with a carveout based on relief rather than types of proceedings); *Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*, 17 C 2066, 2017 U.S. Dist. LEXIS 97180, at *3 (N.D. Ill. June 23, 2017) (contract provides that "any dispute" is subject to arbitration *including* "[C]laims for interim, injunctive, or other emergency relief …."). While the clauses in these cases less clearly limit the equitable relief as that in aid of arbitration, none distinguish between "proceedings" subject to arbitration, which the ISAs here do.

Defendants have identified no binding cases supporting its reading of the carveout. To the contrary, *Comedy Club* suggests that parties *can* "carve out equitable claims … by including an exception within the arbitration clause itself," 555 F.3d at 1285, which is precisely what the parties did here. Furthermore, Defendants' non-binding authority is less than persuasive than the courts' analyses in *Archer & White*, *Miraca Life Sciences*, *Baker*, and *Frydland*, inconsistent with the plain language of the agreements here, and distinguishable.

**D.     Defendants' argument that certain of Plaintiffs' claims "do not necessarily qualify as equitable relief" is irrelevant based on the plain language of the contract, and is incorrect and based on inapplicable caselaw in any event.**

Defendant claims the carveout is inapplicable because certain forms of relief Plaintiffs request are "not necessarily" equitable, although they only substantively discuss declaratory relief and restitution. This tentative argument addresses neither the plain language of the agreement nor the statutes at issue and has no merit.

1    To begin, Defendants do not contest that Plaintiffs *do* plead claims for equitable relief.

2    Plaintiffs' requests, for instance, that the Court enjoin Defendants from enforcing or collecting on the

3    ISAs or misrepresenting job placement rates are plainly prospective and equitable. Thus, stated in terms

4    of the ISAs, Plaintiffs have commenced a "proceeding … seeking an injunction [and] other equitable

5    relief." By the plain language of the agreement, whether Plaintiffs' claims for restitution are

6    "necessarily" equitable or legal is irrelevant because the carveout unambiguously exempts this

7    "proceeding" from arbitration. For example, in *Archer & White*, the plaintiffs sought both injunctive

8    relief and damages, and the court found that *neither* type of claim was subject to arbitration because the

9    plain language exempted *any* action seeking an injunction. 935 F.3d at 283-84. The same reasoning

10   obtains here, and while Plaintiffs pleaded only equitable relief, they *could* have pursued damages

11   without such claims being subject to the arbitration clause.[5] Hence, the language of the ISA renders

12   Defendants' argument irrelevant.

13       Moreover, even if it did matter how Plaintiffs' claims for restitution were characterized,

14   Defendants' cases don't answer that question, which explains their mealy-mouthed "not necessarily"

15   qualifier. Defendant only cites three ERISA cases and, confusingly, a case regarding a Florida unfair

16   competition law to characterize Plaintiffs' California law claims. Defendants do not even attempt to

17   show that restitution under the UCL, CLRA, or FAL is legal rather than equitable, nor can they.

18   *California* case law, which governs the interpretation of California statutes, makes clear only equitable

19   remedies are available to private plaintiffs under the UCL and FAL. *See Korea Supply Co. v. Lockheed*

20   *Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *In re Vioxx Class Cases*, 80 Cal. App. 4th 116, 130

21   (2009). Meanwhile, non-injunctive relief is available under the CLRA only following notice and the

22   opportunity for voluntary correction under Cal. Civ. Code § 1782(a), which Plaintiffs did not pursue

23   here. As masters of their Complaint, Plaintiffs have pleaded remedies that California law defines as

24   equitable, and Defendants meek arguments based on ERISA and Florida law are unavailing.

25

26

27   _____

[5] Plaintiffs do not dispute Defendants' observation that the nature of declaratory relief depends upon the underlying remedies sought, Mot. at 29-30, but this, too, is irrelevant where Plaintiffs seek certain remedies that are indisputably equitable.

28

III.   **There is no valid agreement to arbitrate as to Plaintiffs Fuller, Goncalves, and McAdams and the BPPE subclass because California law forbids the <u>enforcement of the ISAs, including the arbitration clause.</u>**

As the parties seeking to compel arbitration, Defendants "must prove the existence of a valid agreement by a preponderance of the evidence." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832 (9th Cir. 2022). For three of the four Plaintiffs, they cannot.

Even if the Court is uncertain regarding the scope of the arbitration clause, Plaintiffs Fuller, Goncalves, and McAdams cannot be compelled to arbitration because—contrary to Defendants' assertion, Mot. at 20—these Plaintiffs do *not* concede the validity of the arbitration agreement. As to these Plaintiffs and any students who signed such agreements prior to Lambda's approval to operate on August 17, 2020, the ISA as a whole is void and all portions of it, including the arbitration clause, are *per se* unenforceable under California law.

Here, there is no valid agreement to arbitrate by operation of law. The California Education Code provides:

> A note, instrument, or other evidence of indebtedness relating to payment for an educational program is void and not enforceable unless, at the time of execution of the note, instrument, or other evidence of indebtedness, the institution held an approval to operate ….

Cal. Ed. Code § 94917.[6] Rights afforded to students in private postsecondary institutions like Lambda under the Education Code cannot be waived. *Id.* § 94922.

The plain language of the statute must, of course, guide the Court's analysis and leads to three inescapable conclusions. ***First***, the ISAs *as a whole* is unquestionably an "instrument" covered by the statute. *Black's Law Dictionary* defines "instrument" as "A written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, *contract*, will, promissory note, or share certificate" (emphasis added).[7] ***Second***, the ISA is also unquestionably an instrument that creates debt. The BPPE itself, which is charged with enforcing the statute, found as much with regard to Lambda in an order on June 22, 2020. (Compl. ¶ 42.) This Court should defer to this interpretation. *See, e.g.*, *L&S Framing,*

---

[6] The language "void and" in the provision was added in 2022, 2022 California Chapter 544 (2022 SB 1433), but this change does not substantively affect the issues in this case, as the pre-2022 language would preclude enforcement of the ISA and its arbitration clause regardless.

[7] Plaintiffs have found no cases citing § 94917.

1  *Inc. v. Occupational Safety & Health Appeals Bd.*, 93 Cal. App. 5th 995, 1009 (2023). ("An agency's

2  expertise with regard to a statute or regulation it is charged with enforcing entitles its interpretation of

3  the statute or regulation to be given great weight unless it is clearly erroneous or unauthorized.")

4  (citation omitted). This accords with the conclusions of the U.S. Consumer Financial Protection Bureau,

5  the California Department of Financial Protection and Innovation, and the U.S. Department of

6  Education, each of which found that ISAs are student loans, which create debt. (Compl. ¶¶ 99-101.)

7  ***Third***, Defendants are unquestionably attempting to enforce the ISA by using it to send this case to

8  arbitration. By statute they are forbidden from doing so.

9      Notably, in its Motion to Dismiss, Lambda *does not deny* that it lacked the required BPPE

10  approval to operate. Instead, it feebly claims that it is "not accurate to characterize" it as such because it

11  was "engaged in good faith throughout the approval process" and had "not yet exhausted every avenue

12  of appeal." (Doc. 11 at 11-12.) This is nonsense. First, Lambda does not and cannot dispute that at the

13  time Plaintiffs entered into their ISAs it had been told it was not approved to operate and was ordered to

14  close. Second, it does not and cannot dispute that the relevant statutes provide no "good faith" defense,

15  nor authorization to operate and indebt students during the pendency of an appeal. Third, it does not and

16  cannot dispute that its CEO Allred publicly stated that this lack of approval "doesn't affect students at

17  all" (Compl. ¶ 45), a patently false statement because the lack of approval meant that the ISAs to which

18  Lambda signed students were, in fact, unenforceable.

19      Lambda will undoubtedly point to the severability clause within the ISAs to argue that even if it

20  cannot collect on the debts they create, the other provisions, including the arbitration clause, remain.

21  This, too, runs headlong into the plain language of statute, which provides that an "instrument" entered

22  into by an unapproved institution cannot be enforced. If the legislature had merely intended that debts

23  incurred to unapproved institutions are uncollectible, it could have said so. This Court should enforce

24  the statute as written, and hold that for Plaintiffs Fuller, Goncalves, and McAdams, and the BPPE

25  Subclass they seek to represent, the ISAs cannot be used to compel arbitration.

26

27

28

1

## **CONCLUSION**

2      For the foregoing reasons, Defendant's motion to compel arbitration should be denied.

3

4      Dated: December 6, 2023                **MINER, BARNHILL & GALLAND, P.C.**

5                                             By: ___/s/ *David Baltmanis*_____
                                                  DAVID BALTMANIS
                                                  RYAN MILLER
6

7                                             **NATIONAL STUDENT LEGAL DEFENSE NETWORK**
                                                  ALEXANDER S. ELSON

8                                             **COTCHETT, PITRE & McCARTHY, LLP**
                                                  BRIAN DANITZ
9

10                                            *Attorneys for Plaintiffs and the Proposed Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28