PILLSBURY WINTHROP SHAW PITTMAN LLP
PATRICK HAMMON (255047)
patrick.hammon@pillsburylaw.com
ANDREW K. PARKHURST (324173)
andrew.parkhurst@pillsburylaw.com
2550 Hanover Street
Palo Alto, CA 94304-1115
Telephone: 650.233.4500
Facsimile: 650.233.4545

Attorneys for Defendants,
BLOOM INSTITUTE OF TECHNOLOGY;
AUSTEN ALLRED

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FULLER, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>BLOOM INSTITUTE OF TECHNOLOGY, et al.<br><br>Defendants. | Case No. 3:23-CV-01440-AGT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY THE CASE**<br><br>Date: January 12, 2024<br>Time: 10:00 a.m.<br>Dept: Courtroom A, 15th Floor<br>Judge: Magistrate Alex G. Tse |

## TABLE OF CONTENTS


INTRODUCTION ........ 7

ARGUMENT ........ 8

I. THE DELEGATION QUESTION: PLAINTIFFS HAVE NOT IDENTIFIED ANY BASIS TO OVERRIDE THE PARTIES' DECISION TO DELEGATE. ........ 8

A. Plaintiffs' "Unsophistication" Argument Fails As A Matter Of Law ........ 8

B. Plaintiffs' "Unsophistication" Argument Has No Basis In Fact Either. ........ 11

C. The Ninth Circuit Has Rejected Plaintiffs' Argument That The Parenthetical Negates Incorporation Of The AAA Rules. ........ 12

II. THE ARBITRABILITY QUESTION: REGARDLESS OF WHO MAKES THE DETERMINATION, PLAINTIFFS' CLAIMS MUST BE ARBITRATED. ........ 13

A. Plaintiffs' Discussion Of The Term "Proceedings" Confirms The Reasonableness Of Defendants' Proffered Interpretation Of The Arbitration Agreement. ........ 14

B. Plaintiffs' Out-of-Circuit Authorities Do Not Show That The Arbitration Agreement Is Not Susceptible To Defendants' Interpretation. ........ 15

C. Plaintiffs' Ineffective Attempts At "Distinguishing" Cases Does Not Change the Fact That The Agreement Is Susceptible to Defendants' Proffered Interpretation. ........ 17

D. Plaintiffs Have Not Offered A Reasonable, Let Alone More Reasonable, Interpretation Of The Arbitration Agreement. ........ 19

III. PLAINTIFFS' PREMATURE ATTEMPT AT ANSWERING THE MERITS QUESTION, BY ARGUING THE AGREEMENTS ARE VOID BECAUSE THEIR ISAS ARE UNENFORCEABLE, IS FORECLOSED BY BINDING PRECEDENT. ........ 19

CONCLUSION ........ 21

# TABLE OF AUTHORITIES

## CASES

*Ambler v. BT Americas Inc.*
964 F. Supp. 2d 1169 (N.D. Cal. 2013) .......... 13

*Archer & White Sales, Inc. v. Henry Schein, Inc.*
935 F.3d 274 (5th Cir. 2019) .......... 15

*AT&T Tech., Inc. v. Commc'n Workers*
475 U.S. 643 (1986) .......... 13

*Auntie Anne's, Inc. v. Wang*
2014 WL 11728722, at *3 (C.D. Cal. July 16, 2014) .......... 19

*Baker v. Montron*
2020 WL 128531, at *4 (D.N.H. Jan. 10, 2020) .......... 16

*Bazine v. Kelly Services Global, LLC*
2023 WL 4138252, at *6 (N.D. Cal. June 21, 2023) .......... 9

*Blanton v. Domino's Pizza Franchising LLC*
962 F.3d 842 (6th Cir. 2020) .......... 13

*Bloom v. ACT, Inc.*
2018 WL 6163128, at *4, 2018 (C.D. Cal. Oct. 24, 2018) .......... 9

*Brennan v. Opus Bank*
796 F.3d 1125 (9th Cir. 2015) .......... 9

*Chaine v. Tesla Energy Ops., Inc.*
2021 WL 4932733, at *4 (C.D. Cal. Apr. 8, 2021) .......... 9

*Cochrane v. Open Text Corp.*
692 Fed. Appx. 848 (9th Cir. June 27, 2017) .......... 8

*Comedy Club, Inc. v. Improve W. Assocs.*
553 F.3d 1277 (9th Cir. 2009) .......... 15, 17, 18, 19

*Davis v. SEVA Beauty, LLC*
C17-547, 2017 U.S. Dist. Lexis 148434, at *5 (W.D. Wash. Sept. 13, 2017) .......... 16

*Dohrmann v. Intuit, Inc.*
823 Fed. App'x 482 (9th Cir. 2020) .......... 17, 18, 19

*Farr v. Acima Credit, LLC*
2021 WL 2826709, at *4 (N.D. Cal. July 7, 2021) .......... 18, 19

*Fauceglia v. Univ. of S. Cal.*
2021 WL 1783228, at *5 (C.D. Cal. Mar. 29, 2021) .......... 11

*Frydman v. Diamond*
2015 WL 5294790, at *5 (S.D.N.Y. Sept. 10, 2015) ..... 16

*G.G. v. Valve Corp.*
2017 WL 1210220, at *1-2 (W.D. Wash. Apr. 3, 2017) ..... 10

*G.G. v. Valve Corp.*
799 Fed. Appx. 557 (9th Cir. Apr. 3, 2020) ..... 8, 10

*Galen v. Redfin Corp.*
2015 WL 7734137, at *7 (N.D. Cal. Dec. 1, 2015) ..... 11

*Gerlach v. Tickmark Inc.*
2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) ..... 9, 11

*Gountoumas v. Giaran, Inc.*
2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018) ..... 9

*Green Tree Fin. Corp.-Ala. v. Randolph*
531 U.S. 79 (2000) ..... 13

*Henry Schein, Inc. v Archer & White Sales, Inc.*
139 S. Ct. 524 (2019) ..... 20

*Hernandez v. United Healthcare Servs., Inc.*
2018 WL 7458649, at *5 (C.D. Cal. July 26, 2018) ..... 9

*In re Johanson's Estate*
62 Cal. App. 2d 41 (1943) ..... 10

*Info. Sys. Audit & Control Ass'n Inc. v. Telecom Sys., Inc.*
2017 WL 2720433, at *1 (N.D. Ill. June 23, 2017) ..... 16, 17

*Ingalls v. Spotify USA, Inc.*
2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016) ..... 11

*Jefferson v. Cal. Dept. of Youth Authority*
28 Cal. 4th 299 (2002) ..... 10

*Kilgore v. KeyBank, Nat. Ass'n*
718 F.3d 1052 (9th Cir. 2013) ..... 20

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*
845 F.3d 979 (9th Cir. 2017) ..... 20

*Maybaum v. Target Corp.*
2022 WL 1321246, at *5 (C.D. Cal. May 3, 2022) ..... 9

*McLellan v. Fitbit, Inc.*
2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017) ..... 11, 12

*Meadows v. Dickey's Barbecue Restaurants Inc.*
144 F. Supp. 3d 1069 (N.D. Cal. 2015) ........ 11

*Metzger v. Aetna Ins. Co.*
227 N.Y. 411 (N.Y. App. 1920) ........ 10

*Miller v. Time Warner Cable Inc.*
2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ........ 9

*Mohamed v. Uber Techs., Inc.*
848 F.3d 1201 (9th Cir. 2016) ........ 8, 9

*Norcia v. Samsung Telecomms. Am., LLC*
845 F.3d 1279 (9th Cir. 2017) ........ 10

*Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*
474 N.Y.S. 2d 122 (N.Y. App. 1984) ........ 10

*Oberstein v. Live Nation Ent., Inc.*
60 F.4th 505 (9th Cir. 2023) ........ 13

*Oracle Am., Inc. v. Myriad Grp. A.G.*
724 F.3d 1069 (9th Cir. 2013) ........ 8, 9, 12

*Patrick v. Running Warehouse, LLC*
2022 WL 10584136, at *4 (C.D. Cal. Oct. 18, 2022) ........ 9

*Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*
490 F. Supp. 3d 1257 (S.D. Ohio 2020) ........ 13

*Randas v. YMCA of Metro. L.A.*
17 Cal. App. 4th 158 (1993) ........ 10

*Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*
816 F. Supp. 213 (S.D.N.Y. 1993) ........ 16

*Rent-A-Center, W., Inc. v. Jackson*
561 U.S. 63 (2010) ........ 20

*Roszak v. U.S. Foodservice Inc.*
628 Fed. Appx. 513 (9th Cir. Jan. 6, 2016) ........ 8

*Shklovskiy v. Khan*
709 N.Y.S. 2d 208 (N.Y. App. 2000) ........ 10

*Singh v. Payward, Inc.*
2023 WL 5420943, at *7-8 (N.D. Cal. Aug. 22, 2023) ........ 9, 11, 12

*Smith v. Nerium Int'l, LLC*
2019 WL 7195330, at *4 (C.D. Cal. Sept. 10, 2019) ........ 9

*Tabas v. MoviePass, Inc.*
401 F. Supp. 3d 928 (N.D. Cal. 2019) ........ 18, 19

*Torres v. Secure Comm'ns Sys., Inc.*
2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020) ........ 9

*U.S. v. Miraca Life Sciences, Inc.*
2021 WL 679275, at *3 (M.D. Tenn. Feb. 22, 2021) ........ 16, 17

*Wagner v. Stratton Oakmont, Inc.*
83 F.3d 1046 (9th Cir. 1996) ........ 10

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (11th ed.) ........ 15

## INTRODUCTION

The parties' dispute raises three separate questions: (1) who should decide whether Plaintiffs' claims are arbitrable (the "**Delegation Question**"); (2) whether Plaintiffs' claims are, in fact, arbitrable (the "**Arbitrability Question**"); and (3) whether Plaintiffs' claims have any merit (the "**Merits Question**"). Only the first two questions are presently at issue—the third, which should eventually be decided by an arbitrator, is not.

In answering the first two questions, the Court must construe the parties' Arbitration Agreement as it would any other contract, interpreting it to give effect to the parties' intentions. The Court is faced with competing arguments about ***what*** those intentions were. Defendants say the parties intended to send "***all disputes***" related to Plaintiffs' ISAs[1] or their tuition payments to arbitration ("Covered Disputes"), and only included the "Parenthetical" (aka, the "Carveout") to confirm the parties' rights to seek court intervention for equitable disputes ***in aid of arbitration***. Defendants assert the Court should follow the letter ***and*** the spirit of several Ninth Circuit decisions which, generally, hold: (1) incorporation of the AAA rules is clear and unmistakable evidence of an intent to delegate the Arbitrability Question; (2) neither "sophistication," nor the Parenthetical, affect that delegation; and (3) a rational interpretation of the Parenthetical is that an arbitrator should decide all Covered Disputes, while the courts reserve jurisdiction to adjudicate ancillary equitable matters. Defendants contend these are in line with the parties' intentions, as expressed in the Arbitration Agreement.

Plaintiffs, on the other hand, say the parties intended to create an exception that would swallow the rule, allowing them to artfully plead themselves out of arbitration just by tacking on a request for equitable relief. Plaintiffs ask the Court to adopt the reasoning of a single Fifth Circuit panel (which runs contrary to the Ninth Circuit) and a handful of other readily distinguishable lower-court cases. Soaking wet, all Plaintiffs have done is demonstrate that ***some*** courts—most of which are outside of the Ninth Circuit—have interpreted ***some*** arbitration provisions—none of which

[1] As referenced in Plaintiffs' Complaint (Dkt. 1) ("Compl."), each signed an Income Share Agreement ("ISA") before enrolling. Plaintiffs' lawsuit seeks to undo those ISAs and compel a refund of any tuition already paid. Each ISA contains an arbitration provision (the "Arbitration Agreement").

contain the "proceedings" language that the one in this case does—in a manner that ***might*** exempt their claims, either from delegation or arbitration. What Plaintiffs have ***not*** done, however, is establish that ***this*** Court ***must*** interpret the Arbitration Agreement in ***this** case* in a way that requires denying the Defendants' Motion. The Plaintiffs did not do so because they cannot do so.

As the Court returns to first principles, and addresses the Delegation and Arbitrability Questions using the correct lens—by interpreting the Agreement to give effect to the parties' intentions—there will be no doubt that the parties intended for the Arbitrability Question ***and*** the Merits Question to be decided by an arbitrator. Thus, Defendants request their Motion be granted.

## ARGUMENT

### I. THE DELEGATION QUESTION: PLAINTIFFS HAVE NOT IDENTIFIED ANY BASIS TO OVERRIDE THE PARTIES' DECISION TO DELEGATE.

Plaintiffs do not (and cannot) deny that, in the Ninth Circuit, "incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).[2] Plaintiffs do not (and cannot) deny that the Arbitration Agreement incorporates the AAA rules: "As the exclusive means of initiating adversarial proceedings to resolve ***any dispute arising out of this agreement*** . . . either party may demand that the dispute be resolved by binding arbitration administered by the American Arbitration Association in accordance with its Consumer Arbitration Rules available at www.adr.org." (Compl., Exs. A-D.) Despite that, Plaintiffs offer two reasons for why the Court should ignore or override the parties' decision to delegate. ***First***, Plaintiffs' ***counsel*** claim their clients are not "sophisticated," and therefore should not be bound by their agreement. ***Second***, Plaintiffs argue that, because of the remedy they seek, everything that ***touches*** this lawsuit was "carved out" from the arbitration clause. Both arguments fail.

#### A. Plaintiffs' "Unsophistication" Argument Fails As A Matter Of Law.

Plaintiffs first ask the Court to excuse them from delegation because they claim the "better-reasoned" and "greater weight" of authority requires consideration of the parties' "sophistication"

[2] *See also G.G. v. Valve Corp.*, 799 Fed. Appx. 557, 558 (9th Cir. Apr. 3, 2020) (Mem.); *Cochrane v. Open Text Corp.*, 692 Fed. Appx. 848, 849 (9th Cir. June 27, 2017) (Mem.); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208-09 (9th Cir. 2016); *Roszak v. U.S. Foodservice Inc.*, 628 Fed. Appx. 513, 514 (9th Cir. Jan. 6, 2016) (Mem.); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

when determining whether delegation by incorporation is effective. (Dkt. 54 ("Opp."), 8 (string citing eleven, non-binding cases).) Not so. Plaintiffs vastly overstate the "weight" of authority. For every case Plaintiffs cite, another holds that the "greater weight" of authority has concluded that the holdings of *Oracle* and *Brennan* apply equally to non-sophisticated parties and/or refuses to use "unsophistication" as a basis for avoiding delegation by incorporation.[3] Further, Plaintiffs do not even ***attempt*** to explain why their "parade of cases" presents the "better-reasoned authority." Instead of analyzing that "reasoning," Plaintiffs just provide soundbites. A closer look reveals that the "better-reasoned" authority actually aligns with Defendants' position.

As discussed in Defendants' Motion, the Ninth Circuit has consistently refused to limit delegation by incorporation to "sophisticated" parties. (Dkt. 10 ("Mot."), 14-18 (citing *Oracle*, 724 F.3d at 1074; *Brennan*, 796 F.3d at 1130; *Mohamed*, 848 F.3d at 1208-09).) Perhaps the most

[3] *See, e.g.*, *Singh v. Payward, Inc.*, 2023 WL 5420943, at *7-8 (N.D. Cal. Aug. 22, 2023) (declining to consider sophistication because it "requires impractical line-drawing"); *Bazine v. Kelly Services Global, LLC*, 2023 WL 4138252, at *6 (N.D. Cal. June 21, 2023) (refusing to consider sophistication, and even accepting the plaintiff's self-characterization as "unsophisticated," before compelling arbitration); *Patrick v. Running Warehouse, LLC*, 2022 WL 10584136, at *4 (C.D. Cal. Oct. 18, 2022) ("The Court agrees with the ***majority*** view and finds that incorporation of [] arbitration rules constitutes clear and unmistakable evidence that the parties intended to delegate arbitrability, regardless of whether the parties are 'sophisticated.'") (emphasis added); *Maybaum v. Target Corp.*, 2022 WL 1321246, at *5 (C.D. Cal. May 3, 2022) ("As an initial matter, the ***majority*** of courts have concluded that *Brennan* applies equally to sophisticated and unsophisticated parties.") (emphasis added); *Gerlach v. Tickmark Inc.*, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) ("[T]he ***greater weight*** of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties. . . . In fact, courts regularly hold that incorporation of the AAA rules is evidence of a 'clear and unmistakable' intent to delegate the question of arbitrability to the arbitrator, with no discussion of, or attention to, the parties' level of sophistication.") (emphasis added); *Chaine v. Tesla Energy Ops., Inc.*, 2021 WL 4932733, at *4 (C.D. Cal. Apr. 8, 2021) ("The ***greater weight*** of authority has concluded that ***the holding of [Brennan] applies similarly to non-sophisticated parties.***") (emphasis added); *Torres v. Secure Comm'ns Sys., Inc.*, 2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020) ("[A]lthough the facts in *Brennan* were limited to sophisticated parties, it applies similarly to non-sophisticated parties."); *Smith v. Nerium Int'l, LLC*, 2019 WL 7195330, at *4 (C.D. Cal. Sept. 10, 2019) (*Brennan* "applies similarly to non-sophisticated parties"); *Gountoumas v. Giaran, Inc.*, 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018) ("The Court agrees with the ***majority view***, and concludes that incorporation of AAA rules constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability, even if one or more of the parties are unsophisticated.") (emphasis added); *Bloom v. ACT, Inc.*, 2018 WL 6163128, at *4, 2018 (C.D. Cal. Oct. 24, 2018) ("The general trend since *Oracle America* is to allow arbitrability delegation vis-à-vis the incorporation of AAA rules, regardless of the parties' sophistication."); *Hernandez v. United Healthcare Servs., Inc.*, 2018 WL 7458649, at *5 (C.D. Cal. July 26, 2018) ("Plaintiff's argument is unavailing because this Court has previously found that 'the holding of *Opus Bank* applies . . . to non-sophisticated parties."); *Miller v. Time Warner Cable Inc.*, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ("[T]he ***greater weight*** of authority has concluded that the holding of *Opus Bank* applies similarly to non-sophisticated parties.") (emphasis added).

compelling—and most recent—example of that refusal is the Ninth Circuit's decision in *G.G. v. Valve Corp.*, 799 Fed. Appx. 557 (9th Cir. Apr. 3, 2020) (Mem.).[4] Though unpublished, and therefore, not binding precedent, the *G.G.* Court determined that a group of "***teenagers***" had "clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules." *Id.* at 558 (emphasis added) (citations omitted). In so holding, the *G.G.* Court explained that "***[t]he parties' degree of sophistication does not change this conclusion*** because, under Washington law, '[c]ourts presume that the parties to an agreement have read all parts of the entire contract and intend what is stated in its objective terms,'" and "'[c]ontractual language must . . . be interpreted in light of existing [] rules of law.'" (emphasis added) (citations and quotations omitted). For at least the fourth time, the Ninth Circuit had the opportunity to impose a sophistication requirement—in a case involving ***minor children***—and instead chose not to do so. For the same reasons as *G.G.*, this Court should reject Plaintiffs' argument. Considering "sophistication" in the context of evaluating an arbitration provision would run headlong into decades of Supreme Court, Ninth Circuit, and California[5] and New York contract[6] law.[7]

---

[4] In *G.G.*, the plaintiffs (minor children who signed an arbitration agreement and their parents who did not) sued a video game manufacturer for various common law and statutory claims. *See G.G. v. Valve Corp.*, 2017 WL 1210220, at *1-2 (W.D. Wash. Apr. 3, 2017).

[5] Plaintiffs assume that California law governs this case. (*See* Opp., 15, 23-24.) But the ISA includes a New York choice of law provision. (*See* Compl., Exs. A-D.) While relevant to this case, this does not change the present discussion for the reasons set forth *infra*.

[6] Arbitration agreements are simply contracts and must be interpreted and enforced the same as any other contract. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

[7] In California (or New York), the relative sophistication of contracting parties should not bear on whether their agreement delegated arbitrability issues to an arbitrator. *Jefferson v. Cal. Dept. of Youth Authority*, 28 Cal. 4th 299, 303 (2002) ("The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding."); *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (N.Y. App. 1920) ("He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them, and there can be no evidence for the jury as to his understanding of its terms."). And "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017); *Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 474 N.Y.S. 2d 122, 867 (N.Y. App. 1984) ("[O]ne who assents to a written contract is conclusively presumed to know its contents such that there can be no question of fact as to his understanding of its terms."). This is true even when the party did not read the contract. *See, e.g.*, *Randas v. YMCA of Metro. L.A.*, 17 Cal. App. 4th 158, 163 (1993) ("[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it."); *In re Johanson's Estate*, 62 Cal. App. 2d 41, 54 (1943) ("[I]t was to be presumed from the fact that she signed it that she had read it and knew its contents."); *Shklovskiy v. Khan*, 709 N.Y.S. 2d 208, 209 (N.Y. App. 2000) ("[A] party will not be

Each Plaintiff signed an ISA which incorporates the AAA rules and provides clear and unmistakable evidence of an intent to delegate. No binding authority requires proof of "sophistication"—and indeed would be contrary to countless other legal principles if it did. That ends the inquiry and marks the logical death knell of Plaintiffs' argument.[8]

**B. <u>Plaintiffs' "Unsophistication" Argument Has No Basis In Fact Either.</u>**

Even if Plaintiffs' alleged "unsophistication" were relevant, their counsel makes no attempt to show that Plaintiffs are, in fact, "unsophisticated." Prefatorily, Plaintiffs have not set forth ***any*** workable definition of "sophistication." Instead, they cite three cases in support of the contention that sophistication requires "specialized training or experience in law or business." (Opp., 10.)[9] Cases not cited by Plaintiffs reveal that the standard likely is not so onerous, and even a "modicum" of sophistication may suffice. *Galen v. Redfin Corp.*, 2015 WL 7734137, at *7 (N.D. Cal. Dec. 1, 2015) ("modicum" of sophistication enough); *Gerlach v. Tickmark Inc.*, 2021 WL 3191692, at *5 (N.D. Cal. July 28, 2021) ("modicum" of sophistication enough and satisfied by plaintiff who "knew to ask questions about" material terms of contract).

Plaintiffs' argument hinges on their counsel's ***assertion*** that "[t]here is no evidence here that Plaintiffs had" "legal or business experience or training" because they purportedly came "from various fields unrelated to the law, arbitrations, or complicated contracts." (Opp., 10). But these are nothing more than allegations in a complaint; they are not evidence. Indeed, it is Plaintiffs who

---

excused from his failure to read and understand the contents of a release. A party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms.").

[8] As explained by Judge Donato, such a position "makes little practical sense. The factors that might make someone 'sophisticated' are poorly suited to a standard definition that parties can rely upon to avoid uncertainty or surprise in the meaning of the instrument they signed. A party-by-party assessment of sophistication under some loose amalgam of personal education, line of work, professional knowledge, and so on would undermine contract expectations in potentially random and inconsistent ways. Applying such an individualized inquiry in the class action context would likely raise additional problems." *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017); *Singh*, 2023 WL 5420943, at *8 ("sophistication" "requires impractical line-drawing").

[9] In one case, intelligence was not enough, only "training or experience working as a lawyer" would suffice. *Fauceglia v. Univ. of S. Cal.*, 2021 WL 1783228, at *5 (C.D. Cal. Mar. 29, 2021). In another, being a music teacher or an architect was insufficient, but "<u>*any*</u> business or legal acumen" could qualify. *Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016) (emphasis added). In the third, purchasing a restaurant franchise was inadequate because only "legal training or experience dealing with complicated contracts" would do. *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1079 (N.D. Cal. 2015).

possess the information needed to show whether they lack sophistication.[10] They had almost ***eight*** months since Defendants filed their opening brief—and they either could not find it or just decided not to present it—no resumes, no declarations, nothing.[11] Without ***evidence***, this argument must fail.

### C. The Ninth Circuit Has Rejected Plaintiffs' Argument That The Parenthetical Negates Incorporation Of The AAA Rules.

Plaintiffs next conflate the Arbitrability and Delegation Questions by arguing that everything touching this lawsuit ***must*** be decided by the Court. According to Plaintiffs, because their claims fit within the Parenthetical, not only are those claims "carved out," but so too is the threshold question of whether they are arbitrable in the first place. But the Ninth Circuit has already rejected this "because ***something*** is carved out, ***everything*** is carved out" argument. *Oracle*, 724 F.3d at 1076 ("Oracle's argument conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability. The decision that a claim relates [to the carveout] constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules."). Plaintiffs try to escape the Ninth Circuit's rule in *Oracle* by citing two lower court decisions and a footnote within a Fifth Circuit case to argue that *Oracle* was wrongly decided or limited to its facts. (Opp., 3-8.)

But the Ninth Circuit has already rejected these arguments too. Just this year, the Ninth Circuit explained its own decision in *Oracle* as "holding that a carve-out provision excepting certain

---

[10] Plaintiffs dismiss the extensive "diligence" they purport to have done into Defendants before enrolling, by claiming it is "irrelevant." (Opp., 10.) But they cite no legal authority explaining why. Indeed, it makes no sense to claim that Plaintiffs are sophisticated enough to understand, and rely upon, job placement rates (Dkt. 59, ¶120) and to understand, and assign value to, whatever is meant by being "approved to operate" (presumably by pertinent regulators) (*id*., ¶147), while also claiming they are not sophisticated enough to understand a contract. Both of these things cannot be true. Regardless, the Court should view Plaintiffs' omission of actual evidence on this issue with a jaundiced eye, given that just a cursory review by Defendants of the limited facts they had access to regarding Plaintiffs' "sophistication" shows intellect, business savvy, and accomplishment. (*See* Declaration of Jennifer Erb, ¶¶ 7-8, Exs. A-D; Declaration of Patrick Hammon, ¶ 2, Ex. A.)

[11] Even if the named Plaintiffs ***had*** shown they were "unsophisticated," they certainly have not shown that the putative class is "unsophisticated", likely because doing so would be bizarre and untenable. The putative class consists of approximately 1,994 individuals. (Dkt. 32, p. 13.) Will the Court need to make "sophistication" assessments of each person? Will that lead to two different actions—one for "sophisticated" students in arbitration and another for "unsophisticated" students in the courts? These are just some of the "additional problems" such an "individualized inquiry" would cause and which would require "impractical line-drawing," together vitiating any logical argument for considering sophistication (especially in the class action context), as highlighted by Judge Donato in *McLellan* and Judge Breyer in *Singh*.

claims from an arbitration provision does not abridge an otherwise clear and unmistakable delegation of arbitrability question to the arbitrator." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509 n.1 (9th Cir. 2023).[12] Again, as set forth above, Plaintiffs clearly and unmistakably delegated via incorporation of the AAA rules. So, as with their "sophistication" argument, Plaintiffs' delegation-carve-out argument is precluded for the same the *Oracle* Court rejected it years ago.

Plaintiffs' attempt at eviscerating the parties' decision to delegate is unsupportable. There is no sophistication requirement under the law (and would be untenable in the class action context even if there were). Plaintiffs have not even tried to prove they are "unsophisticated," let alone explain what that term means. And the Parenthetical does not limit or abridge the delegation either. Plaintiffs' have no basis to evade their voluntary decision to delegate the arbitrability determination.

## II. THE ARBITRABILITY QUESTION: REGARDLESS OF WHO MAKES THE DETERMINATION, PLAINTIFFS' CLAIMS MUST BE ARBITRATED.

To avoid arbitration, it is ***Plaintiffs*** who "bear[ ] the burden" of proving that their claims "are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). To carry this burden, Plaintiffs must show that "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1173-74 (N.D. Cal. 2013) (quoting *AT&T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986). If there are "any doubts as to arbitrability," they "must be resolved in favor of coverage." *Id*. Practically speaking, then, for Plaintiffs to defeat Defendants' Motion, they need to do more than provide the Court with an alternative interpretation; they must show that the Arbitration Agreement

[12] The Sixth Circuit, recognizing the tension between the Fifth and Ninth Circuits, also provides a nice discussion of why *Oracle* is correct, and *Archer* is not. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 847-48 (6th Cir. 2020) ("[Reading] the agreement to say that the arbitrator shall have the power to determine the scope of the agreement *only* as to claims that fall within the scope of the agreement . . . would render the AAA's jurisdictional rules superfluous. . . . But to the extent that [the] arbitration agreement carves out certain claims from arbitration, it does so from the agreement in general, not from the provision that incorporates the AAA Rules. So, the carveout goes to the *scope of the agreement*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of 'arbitrability.'") (emphasis in original). In any event *Blanton* recognized that *Oracle* and *Archer* were directly at odds. *See Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp. 3d 1257, 1265 (S.D. Ohio 2020) ("This follow-up discussion suggests that, faced with the issue, the Sixth Circuit would reach a different result than the Fifth Circuit in *Archer & White*. Rather, like the Ninth Circuit in *Oracle*, the Sixth Circuit would reason that [the] argument 'conflates the scope of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability."). Because Plaintiffs filed this case in California and not Texas, *Oracle* controls.

is ***not*** susceptible to the interpretation offered by Defendants. Plaintiffs have not done either.

Defendants' Motion identified fair and reasonable interpretations of the Arbitration Agreement that would require arbitrating Plaintiffs' claims. (Mot., 20-26.) Specifically, Defendants explained that the Parenthetical allows the parties to seek injunctive relief or similar equitable relief: (1) to enforce the Arbitration Agreement; (2) to effectuate the arbitrator's decisions; (3) to preserve the status quo while the arbitrator decides the underlying merits; and/or (4) after the merits of the underlying substantive claims have been adjudicated in arbitration. (Mot., 21-28[13].) To underscore the reasonableness of these interpretations, Defendants cited numerous cases in which other courts have interpreted "carveouts" as confirming the parties' rights to initiate one or more of the foregoing proceedings outside of arbitration. Defendants did not contend that any of the provisions at issue in those cases were identical to the Parenthetical in this one. Nor did they contend that any of those authorities ***require*** this Court to interpret the Parenthetical in the same manner as those courts. The point was only to show that these were reasonable ways of interpreting the Parenthetical in this case. Plaintiffs' Opposition provided no response to these perfectly reasonable interpretations of the Parenthetical—other than a conclusory sentence that they all "fail" followed by various citations to ***out-of-jurisdiction*** authorities in which courts analyzed ***different*** arbitration provisions. That is not enough to satisfy their burden and show that the Arbitration Agreement at issue in ***this*** case is "not susceptible of an interpretation that covers the dispute," beyond "any doubt[]."

### A. <u>Plaintiffs' Discussion Of The Term "Proceedings" Confirms The Reasonableness Of Defendants' Proffered Interpretation Of The Arbitration Agreement.</u>

In their Opposition, Plaintiffs acknowledged that the definitions of "action" and "proceeding" were important—and that they are ***different***. Using Black's Law Dictionary, Plaintiffs define "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." (Opp., 6, n.2.) They did not tell the Court, however, that Black's definition of "proceeding" also includes "[a]ny procedural means for seeking redress from a tribunal or agency," "[a]n act or step that is part of a larger action," "a hearing," and "[a] particular dispute or matter arising within a pending case – as opposed to the case

[13] Against this backdrop, Plaintiffs' claim that Defendants contend "the carveout does nothing" (Opp., 15) is as puzzling as it is untrue. Of course, it does *something*, exactly as Defendants indicated in their Motion.

as a whole." *Proceeding*, BLACK'S LAW DICTIONARY (11th ed.). These definitions show that "proceedings" can and often are subsets of, or events within, "cases" or "actions." This is important because the Parenthetical does ***not*** speak of "any action" or "any case" "seeking an injunction, restraining order, or any other equitable remedy;" it speaks of "proceeding[s]." Against that backdrop, Defendants' proffered interpretation of the Parenthetical makes even more sense—it was not intended to carve out entire "cases" or "actions"; it was only intended to carve out stand-alone "proceedings" (like this one) in court to aid arbitration. A motion for a TRO or a motion to confirm an arbitration award brought by one of the parties illustrates the point; both would be "proceedings" that would be "part of [the] larger action," but which would be initiated to aid the arbitration. But Plaintiffs' lawsuit itself, on the other hand, does not fit within the Parenthetical because it is not a "proceeding" (since it is not "[a]n act or step that is part of a larger action," "a hearing," or "[a] particular dispute or matter arising within a pending case – as opposed to the case as a whole"). Accordingly, Plaintiffs' definitional analysis only helps, rather than hurts, Defendants' position.

**B. <u>Plaintiffs' Out-of-Circuit Authorities Do Not Show That The Arbitration Agreement Is Not Susceptible To Defendants' Interpretation.</u>**

Instead of using Ninth Circuit law, Plaintiffs rely chiefly on *Archer*, a Fifth Circuit case, to support their position. But, unlike *Comedy Club*, *Archer* is not binding on this Court. To the extent *Archer* contradicts the Ninth Circuit's rules,[14] reliance on it is barred. *Archer* is also distinguishable. The agreement at issue there provided:

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [(AAA)].

*Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 277 (5th Cir. 2019). The *Archer* Court determined that the exemption for "***actions*** seeking injunctive relief" included all "actions," such as a request for an injunction, without any limit. It says nothing of "proceedings." While the parenthetical in *Archer* is similar to the one in this case, it uses the term "action," instead of the term "proceeding," like the Parenthetical in this case does. An "action," which Plaintiffs define as "[a] civil or criminal judicial proceeding" (Opp., 6, n.2), is different (and broader than) a "proceeding."

[14] *See* note 12, *infra*, discussing the conflict between the Fifth and Ninth Circuits.

Substituting the word "action" with its definition in *Archer* renders the Fifth Circuit's conclusion logical: "(except for [a civil or criminal judicial proceeding] seeking injunctive relief and disputes related to trademarks, [*etc.*])". But the Parenthetical here does not use that term. So, while the parties in *Archer* may have intended to create a larger loophole for any "action," the same cannot be said for the parties in this case. Accordingly, *Archer* is distinguishable—in this critical way.

Plaintiffs' failure to acknowledge the distinction between "proceedings," on the one hand, and "actions" or "cases," on the other, in their discussion of *Archer* infects their other case discussions as well. And therein lies a consistent problem with Plaintiffs' argument—they claim Defendants' authorities are distinguishable (because the agreements analyzed therein differ slightly), but nevertheless ask this Court to follow cases like *Archer*, which do not deal with carveouts that mention "proceedings." Because of that problem, as well as the fact that they are not binding, Plaintiffs' citations to *Frydman*, *Baker*, and *Miraca* do not salvage their position either.

- The *Frydman* provision stated that "the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court of competent jurisdiction, and ***each of the other Parties hereby consent to same and shall not seek to dismiss or move such action to arbitration or other adjudication***." *Frydman v. Diamond*, 2015 WL 5294790, at *5 (S.D.N.Y. Sept. 10, 2015) (emphasis added). The *Frydman* Court hung its hat on the latter clause to determine the notwithstanding proviso was not an aid-of-arbitration provision. *Id.* at *6. Contrast that with the language at issue in this case: "either party may ***demand that the dispute be resolved by binding arbitration***." So, *Frydman* is distinguishable for at least two reasons: first, it dealt with "actions" not "proceedings," and, second, neither party in this case "consent[ed]" to or agreed "not to seek to dismiss or move such action to arbitration." Quite the opposite, Defendants are entitled to demand arbitration.
- *Baker* also dealt with "actions," not "proceedings." *Baker v. Montron*, 2020 WL 128531, at *4 (D.N.H. Jan. 10, 2020). Further, the *Baker* Court recognized that its holding was ***contrary*** to several courts—including those cited in Defendants' motion, here—which had construed a broad equitable exemption from a comprehensive arbitration clause as an aid in arbitration provision. *Id.* at *10.[15] The *Baker* Court explained the reason for its departure as: "Because the arbitration clause at issue here ***does not mandate the arbitration of all covered claims***, it is not in tension with an exemption that permits equitable claims to be resolved by adjudication rather than arbitration." *Id.* (emphasis added). Unlike *Baker* (and like *Remy* and *ISACA*), the Arbitration Agreement ***does*** have a comprehensive arbitration clause—"[a]s the exclusive means of initiating adversarial proceedings to resolve any dispute arising out of this agreement, your Lambda School tuition, or your payments to Lambda School"[16]—and the Arbitration

[15] Citing *Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*, 816 F. Supp. 213 (S.D.N.Y. 1993), *Info. Sys. Audit & Control Ass'n Inc. v. Telecom Sys., Inc.* ("*ISACA*"), 2017 WL 2720433, at *1 (N.D. Ill. June 23, 2017), and *Davis v. SEVA Beauty, LLC*, C17-547, 2017 U.S. Dist. Lexis 148434, at *5 (W.D. Wash. Sept. 13, 2017).

[16] *See Remy Amerique, Inc.*, 816 F. Supp. At 215 ("Any controversy or claim arising out of, or

Agreement ***does*** mandate the arbitration of all covered claims.

- *U.S. v. Miraca Life Sciences, Inc.* was resolved because the claims at issue were not covered in the first place—not because they were "carved out." 2021 WL 679275, at *3 (M.D. Tenn. Feb. 22, 2021). Indeed, the court determined that the "Plaintiff's retaliation claim [wa]s not a claim the parties agreed to arbitrate" because it "d[id] not 'aris[e] out of or in connection with' the parties' Employment Agreement because the claim has nothing to do with the parties' agreement." *Id.* The court then stated: "***This alone settles the issue*** of whether plaintiff's claim is subject to the parties' arbitration agreement." *Id.* (emphasis added). That is a far cry from the facts of this case where all of Plaintiffs' claims fall within the Arbitration Agreement's "any dispute arising out of this agreement, your Lambda School tuition, or your payments to Lambda School" language. *Miraca*, therefore, is inapplicable.[17]

In sum, none of the out-of-circuit cases Plaintiffs cite "overwhelmingly support[]" their position. (Opp., 19.) None are binding. None serve as a basis to depart from *Dohrmann*, *Comedy Club*, or the California district court cases discussed in Defendants' motion.

### C. Plaintiffs' Ineffective Attempts At "Distinguishing" Cases Does Not Change the Fact That The Agreement Is Susceptible to Defendants' Proffered Interpretation.

Defendants' citations to *Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482 (9th Cir. 2020) and *Comedy Club, Inc. v. Improve W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009) established why their proffered interpretation of the Arbitration Agreement was reasonable. (Mot., 22-23.) In both, the Ninth Circuit determined that exceptions in arbitration agreements for injunctions or equitable claims operate as "in aid of arbitration" provisions, rather than entire "carveouts" from arbitration. *Id.* Plaintiffs responded to these authorities by arguing that they are distinguishable since the agreements in *Comedy Club* and *Dohrmann* included the language "in addition to arbitration" and "any party to the arbitration," respectively, which admittedly do not appear in the Arbitration Agreement here. According to Plaintiffs, because the agreements in those cases contained ***other***

---

relating to this Agreement or the breach thereof"); *Information Sys. Audit & Control Ass'n, Inc.*, 2017 WL 2720433, at *1 ("any dispute arising out of or related to this Agreement or the breach thereof").

[17] Plaintiffs may point to dicta in the next section of *Miraca* to argue the opinion supports their "everything is carved out" argument. *Id.* at *3-4. While the court ***did*** indicate that the carveout would also bar sending the case to arbitration, not only is that dicta, but it also relates to a carveout that is distinguishable from the Parenthetical in this case. The *Miraca* provision expressly provided that parties can seek equitable relief "without first submitting the matter to mediation or arbitration . . . even if a similar matter has already been referred to mediation or arbitration." *Id.* at *3. The Arbitration Agreement here contains no such exception—there is no "without first submitting" or "even if a similar matter has already been referred" language. And it is that language the *Miraca* Court determined was dispositive, stating that the parties "expressly agreed that either party could seek injunctive or equitable relief ***without first submitting the matter to these alternative dispute resolution procedures.***" *Id.* So even if *Miraca* was binding, it is off-point and of no value here.

language that assumed the ongoing pendency of an arbitration when such carved-out proceedings in court would take place, they do not support Defendants' proffered interpretation of the Parenthetical in this case.

But these distinctions do not make a difference. Nothing in the Arbitration Agreement demonstrates that the parties ever contemplated an entire lawsuit would proceed in court (before, after, or simultaneously with the arbitration that is mandated for "all disputes" arising out of the Arbitration Agreement). To the contrary, the Agreement discusses in which forum an ***arbitration*** must be conducted—but says nothing about in which forum a court litigation would be. (Compl., A-D.) In any event, the point of *Comedy Club* and *Dohrmann* is to highlight the scope of the Court's inquiry in resolving the Arbitrability Question. The Court is ***not*** tasked with determining which party's interpretation is better or more correct. Its investigation is limited to determining whether Defendants interpretation is "rational" or "plausible and permissible." *Comedy Club, Inc.* 553 F.3d at 1285; *Dohrmann*, 823 Fed. App'x at 485. If so, the Court must send the case to arbitration. Put differently, neither *Comedy Club* not *Dohrmann* held that such interpretations were the ***only*** ones—and that is not what Defendants are arguing here. Because Defendants' proffered interpretation here is "rational," "plausible," and "permissible," both Ninth Circuit opinions instruct this Court to adopt it. This outcome is confirmed by multiple California cases interpreting similar provisions.

- In *Tabas v. MoviePass, Inc.*, the Northern District analyzed an arbitration provision stating: "You and we agree that any dispute, claim or controversy arising out of or relating to [the agreement] will be settled by binding arbitration between you and us, and not in a court of law, with the exception of either party seeking injunctive or equitable relief." 401 F. Supp. 3d 928, 938 (N.D. Cal. 2019). Notably, the language and structure in *Tabas* is extraordinarily similar to the language in this case. The *Tabas* Court determined that it was "bound" by *Comedy Club* which was "directly on point," that there were two permissible interpretations, and sent the case to arbitration. *Id.*
- In *Farr v. Acima Credit, LLC*, the Northern District evaluated an arbitration provision that covered "all '[d]isputes' involving the parties" with an except-for proviso for "remedies which don't claim money damages" including "pre-judgment seizure, injunctions, or equitable relief." 2021 WL 2826709, at *4 (N.D. Cal. July 7, 2021). Citing *Comedy Club* and *Dohrmann*, the *Farr* Court sent the case to arbitration because the "exception" "does not exempt *all* equitable claims but 'was intended to apply only to claims designed to maintain the status quo between the parties" and a different result would produce "absurd results" where a "consumer seeking *any* form of equitable relief could circumvent arbitration, even where, as here, such relief is predicated on a dispute presumably falling within the scope of the arbitration agreement." *Id.* at *5-6.

- In *Auntie Anne's, Inc. v. Wang*, the Central District examined an arbitration provision providing: "Except as otherwise provided . . . with respect to injunctive or equitable relief, all disputes and claims relating to this Agreement . . . shall be settled by arbitration." 2014 WL 11728722, at *3 (C.D. Cal. July 16, 2014). The *Auntie Anne's* Court noted that "[i]f the court were to interpret [the exclusion] as broadly as plaintiff advocates, however, it would, to a substantial degree, vitiate the arbitration provision entirely." *Id.* And "the provision is more probably intended to permit plaintiff to seek limited relief in a court of law – i.e., an injunction – pending a decision on such relief by the arbitrator on the underlying claims." *Id.* at *11. So, as with the others, the *Auntie Anne's* Court sent the case to arbitration. *Id.*

Defendants admit that none of *Tabas*, *Farr*, or *Auntie Anne's* dealt with the ***exact same*** language as the arbitration agreement in this case (though *Tabas* is close). But those cases ***do*** serve to illustrate the point that courts bound to follow *Comedy Club* and *Dohrmann* routinely find that carveouts are not necessarily intended to create massive loopholes. Plaintiffs' attempt at distinguishing these cases does not change the fact that the Parenthetical here is "susceptible" to similar interpretations—which ***requires*** sending the case to arbitration, nonetheless. *Comedy Club, Inc.*, 553 F.3d at 1285.

**D. Plaintiffs Have Not Offered A Reasonable, Let Alone More Reasonable, Interpretation Of The Arbitration Agreement.**

According to Plaintiffs, students who enrolled immediately ***before*** March 2020 (when the Parenthetical was added to the ISA) could only pursue claims in arbitration—while students who enrolled literally just a few days later would be free to litigate the exact same claims in court. This dissimilar treatment of nearly-identical students makes no sense. Likewise, according to Plaintiffs' interpretation of the Parenthetical, if Defendants were to sue a student for unpaid tuition, they would need to do so in arbitration—but if a student were to sue Defendants to recover tuition, she would be free to do so in court. This asymmetry, which was pointed out in Defendants' Motion as something the law disfavors (Mot., 28), and which Plaintiffs did not respond to, also makes no sense. Perhaps most problematically for Plaintiffs' interpretation, however, is that they contend actions to recover tuition payments must be equitable in nature and are, according to them, therefore automatically carved out from arbitration. If this were true, no dispute initiated by a student regarding her "payments to Lambda School" would ever be arbitrated—meaning that the language at the beginning of the Arbitration Agreement ("any dispute arising out of" a student's "payments to Lambda School") would be virtually meaningless. Plaintiffs' interpretation is not just "less reasonable" than Defendants'; it is illogical when analyzed on its own.

///

## III. PLAINTIFFS' PREMATURE ATTEMPT AT ANSWERING THE MERITS QUESTION, BY ARGUING THE AGREEMENTS ARE VOID BECAUSE THEIR ISAS ARE UNENFORCEABLE, IS FORECLOSED BY BINDING PRECEDENT.

Plaintiffs also claim that their ISAs are unenforceable[18] and so, they say, their Arbitration Agreements cannot be enforced.[19] This argument is not serious as their own brief admits by acknowledging their counsel's ratification of the enforceability of pre-2020 ISAs with arbitration provisions in other actions (*see* Opp., 16 (admitting that counsel brought "individual arbitrations" in the past because their "prior clients[]" had "ISAs [with] arbitration clauses with no carveouts")).

Moreover, it is hornbook that "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 70 (2010). That is because "an arbitration provision is severable from the remainder of the contract." *Id.* at 70-71 (citation omitted). This is also true as to a delegation clause within an arbitration provision. *Id.* at 72.[20] Plaintiffs challenge to the contract as a whole, therefore, does not affect the Arbitration Agreement. And, even if they challenged the Arbitration Agreement itself (which they do not), that would not affect the delegation provision.

But, even if Plaintiffs' position were not foreclosed by Supreme Court precedent, it cannot be countenanced. Plaintiffs *allege* that ISAs are unenforceable—that is one of several questions upon which evidence and argument will be submitted. Plaintiffs are, in effect, asking this Court to assume the conclusion in order to avoid arbitration—and all based upon a citation to a yet-to-be-interpreted

---

[18] Plaintiffs concede that Education Code 94917 was amended in 2022 – after each of Plaintiffs signed their ISAs in 2020 and 2021. Prior to that, the provision stated: "A note, instrument, or other evidence of indebtedness relating to payment for an educational program is not enforceable unless . . . ." The change added the words "void and" before "not enforceable." Plaintiffs say this change is immaterial. Not so. Challenging a contract as "void" *might* be perceived as be a challenge to formation, which would be a proper question for the Court. *See Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979 (9th Cir. 2017). On the other hand, challenging a contract as "not enforceable" is a challenge to validity, which is properly decided by an arbitrator. *Id.* ("challenges to the *validity* of a contract with an arbitration clause are to be decided by the arbitrator") (emphasis in original). Because only the pre-2022 language is relevant here, Plaintiffs' "challenge" is limited to validity, not formation, and their position is without merit.

[19] Plaintiffs do not contend that the ISAs, as a whole, or any provision in them, are unenforceable as unconscionable. That would require a showing of both substantive and procedural unconscionability, *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013), which has not been made.

[20] *See Henry Schein, Inc. v Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019) ("We have explained that an 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'") (quoting *Rent-A-Center*, 561 U.S. at 70).

or applied-by-any-court section of the California Education Code[21], which may not even be applicable, given the parties' decision to be bound by New York, not California, law. Plaintiffs' argument, which puts the cart before the horse, should be rejected. There has been no judicial determination that Bloom ever operated without "an approval" as supposedly required by section 94917; Plaintiffs' attempt at turning an Opposition into a Summary Adjudication motion, in which the Court would be required to treat their *allegation* as conclusive fact, is improper.

## **CONCLUSION**

Plaintiffs have not shown any basis to excuse them from their delegation of arbitrability. Nor have they shown that the Agreement is not susceptible to Defendants' proffered interpretation. Nor does the Plaintiffs' drive-by unenforceability argument save them. All of Plaintiffs' challenges to sending this case to arbitration fail. Defendants respectfully ask this Court to grant their motion.[22]

Dated: PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Patrick Hammon*

By: PATRICK HAMMON
ANDREW K. PARKHURST

Attorneys for Defendants,
BLOOM INSTITUTE OF TECHNOLOGY;
AUSTEN ALLRED

[21] Plaintiffs cite California Education Code §§ 94917 and 94922. It is unclear why Plaintiffs reference section 94922. Section 94917 and its enforceability language is found in Education Code, Chapter 8, Article 12. But by its very language, section 94922 only applies to Article 13, which has nothing to do with this case. Cal. Ed. Code § 94922 ("A student may not waive any provision ***of this article***."). Plaintiffs' inclusion of the latter as "support" for their position is inapt.

[22] Defendants also ask the Court to stay all claims (if any) that are not sent to arbitration for the reasons set forth in their Motion. Plaintiffs do not oppose that request in their Opposition.