UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA FULLER, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>BLOOM INSTITUTE OF TECHNOLOGY, et al.,<br><br>   Defendants. | Case No. 23-cv-01440-AGT<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 10 |

When plaintiffs enrolled in defendants' coding bootcamp, they signed an arbitration agreement. They agreed to arbitrate disputes arising from the parties' Income Share Agreement, but they carved out from arbitration "proceedings commenced by either party seeking an injunction, a restraining order, or any other equitable remedy or a proceeding commenced by either party in small claims court." *E.g.*, Dkt. 59-1 at 9.

Now involved in litigation, the parties dispute the scope of the carveout. Plaintiffs believe their claims fall within the carveout and should be resolved by a court, not an arbitrator. Defendants say the carveout isn't implicated. Several of the named plaintiffs also contend there is no valid agreement to arbitrate, at all. The arbitration agreement is part of the Income Share Agreement, which plaintiffs argue is invalid under the California Education Code.

\* \* \*

Traditionally, a court would determine the scope of the carveout and the validity of the arbitration agreement. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). But gateway questions of arbitrability, such as scope and validity, can be delegated to an arbitrator if the delegation is "clear and unmistakable." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The parties made such a clear and unmistakable delegation in their agreement.

The parties' delegation clause operates by incorporating into the arbitration agreement the Rules of the American Arbitration Association (AAA). *See, e.g.*, Dkt. 59-1 at 9 (explaining that arbitration will be "administered by the [AAA] in accordance with its Consumer Arbitration Rules available at www.adr.org"). One of those rules gives the arbitrator "the power to rule on . . . any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." R-14(a).

The language of Rule 14(a) is clear and unmistakable: disputes about the scope or validity of the arbitration agreement are for the arbitrator to decide. The parties, by incorporating the AAA rules, made manifest their intent "to arbitrate arbitrability." *Caremark*, 43 F.4th at 1029 (quoting *First Options*, 514 U.S. at 944). *See Brennan*, 796 F.3d at 1130 ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.").[1]

Before enforcing the delegation clause, the Court will not attempt to determine whether plaintiffs were "sophisticated" when they agreed to the clause. More than a few district courts have conducted such an inquiry and only enforced AAA delegation clauses when the parties were sufficiently "sophisticated." *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1031 (N.D. Cal. 2022) (collecting cases). The Ninth Circuit hasn't held that a finding of sophistication is required. *Cf. Brennan*, 796 F.3d at 1130–31 (leaving the question open). And the undersigned agrees with other trial judges who have reasoned that an analysis of sophistication would require "impractical line-drawing." *Singh v. Payward, Inc.*, No. 23-CV-01435-CRB, 2023 WL 5420943, at *8 (N.D. Cal. Aug. 22, 2023) (collecting cases). As one judge in this district persuasively explained: "A party-by-party assessment of sophistication under some loose amalgam of personal education, line of work, professional knowledge, and so on would undermine contract expectations in potentially random and inconsistent ways" and would "likely raise additional

---

[1] "[A] carve-out provision excepting certain claims from an arbitration provision does not abridge an otherwise clear and unmistakable delegation of arbitrability questions to the arbitrator." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509 n.1 (9th Cir. 2023) (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013)).

problems" in "the class action context." *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017). Agreeing with that assessment, the Court holds that plaintiffs need not be "sophisticated," however that term is defined, to delegate gateway arbitrability questions to an arbitrator through incorporation of the AAA rules. "The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding." *Jefferson v. Cal. Dept. of Youth Authority*, 28 Cal. 4th 299, 303 (2002) (quoting another source).

\* \* \*

Clear and unmistakable delegation clauses, like the one the parties agreed to, are enforceable. *See Brennan*, 796 F.3d at 1132. In conformity with the parties' agreement, the Court orders the parties to arbitrate their dispute, grants defendants' motion to compel arbitration, and dismisses the case without prejudice. *See Forrest v. Spizzirri*, 62 F.4th 1201, 1204–05 (9th Cir. 2023) ("[A] district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration.") (quoting another source). Plaintiffs may "file a new action to confirm or vacate any arbitration award," if necessary. *Id.* at 1206.

**IT IS SO ORDERED.**

Dated: January 9, 2024

ALEX G. TSE
United States Magistrate Judge